2 Ill. App.3d 289 (1971)
276 N.E.2d 464
THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,
v.
JAMES STROMPOLIS, Defendant-Appellant.
No. 54901.
Illinois Appellate Court  First District.
November 12, 1971.
*290 Edward T. Stein, of Chicago, for appellant.
Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle, *291 and George Pappas, Assistant State's Attorneys, of counsel,) for the People.
Judgment affirmed.
Mr. JUSTICE LORENZ delivered the opinion of the court on rehearing:
After a bench trial defendant was found guilty of the offense of unlawful use of weapons.[1] He was placed on probation for one year, the first six months of which were to be spent in the House of Correction. On appeal defendant contends:
(1) that his conduct was exempt from prosecution;
(2) that he was not properly informed, nor did he understandingly waive his right to a trial by jury; and
(3) that he was deprived of his right to effective counsel.
Police Officer Farrar, the sole witness for the State, testified on direct examination, that he recovered a sawed-off shotgun from the inside panel of the door on the driver's side of a car which was in the parking lot of a police station. On cross-examination the witness testified that the weapon fell out of the door panel as defendant opened the door to get out of the car. The door panel had been unscrewed to allow its removal. At the time of recovery the weapon, though unloaded, was fully assembled and in a case.
Defendant, the only defense witness, testified that his sister asked him to dispose of the weapon. He took the gun, with the bolt removed, to a police station where he intended to surrender it to a friend of his who was a police officer. Near the police station parking lot he approached some police officers in an attempt to determine the whereabouts of his friend. On being informed that his friend was not on duty, defendant told the officers that he had a gun which he wished to dispose of. After parking his car, as instructed by the officers, he turned the gun over to them. Defendant was then ordered into the police station.

Opinion
 1 (1) Defendant concedes that the testimony of the State's witness shows that the weapon was concealed in a motor vehicle within the meaning of Ill. Rev. Stat. 1969, ch. 38, par. 24-1(a) (4). He contends, however, that this did not constitute a violation since the weapon was not immediately accessible and therefore within the exception created *292 by statute.[2] We cannot agree with defendant in this regard. Before the weapon fell to the ground it was housed behind the inside left front door panel of the vehicle driven by defendant. The weapon was therefore only inches from defendant's left hand. The screws which held the panel in place had been removed thereby enabling defendant to easily gain access to the weapon. Defendant contends the door had to be opened before the weapon could be removed. That contention however is not supported by the record. The fact that the weapon fell out when the door was opened does not mean that the weapon could not be removed with the door closed. Even if the door had to be opened and defendant had to reach down to the base of the door to remove the weapon such movement on defendant's part is not materially different than that found in People v. McKnight (1968), 39 Ill.2d 577, cert. den. 394 U.S. 993 where defendant had to reach beneath the seat to obtain a pistol.
 2, 3 Defendant also contends that the fact that the weapon was found in a case rendered it "not immediately accessible" and therefor within the exceptions to the statute as set out in footnote 2. This contention is without merit in light of the little effort required to open a gun case. (See People v. Foster (1961), 32 Ill. App.2d 462.) The fact that the weapon was found unloaded is also of no moment. The carrying of certain firearms is prohibited by the statute without regard to the question of whether or not the firearm is loaded. The firearm is not on that account to be considered "broken down in non-functioning state."
 4, 5 Defendant testified that the bolt was removed from the gun. If this testimony was believed by the trier of facts defendant would not have been convicted because the weapon would have been "broken down in a non-functioning state" and therefor within the exception set out in footnote 2. The trier of fact chose, however, not to believe the testimony of defendant but to believe the police officer's testimony that the weapon was fully assembled. The function of determining the credibility of witnesses and the weight to be accorded their testimony is assigned to the trial court and this court will not substitute its judgment when the evidence is merely conflicting. (People v. Scott (1966), 34 Ill.2d 41, 45.) We, therefore, hold that defendant's conduct did not come within the exception set out in footnote 2, and the evidence was sufficient to support defendant's conviction.
(2) Defendant next urges that the trial judge erred in failing to *293 inform defendant of his right to trial by jury and also in failing to ascertain whether defendant's waiver of a jury trial was understandingly made. His contention arises out of the following colloquy:
"THE CLERK: James Strompolis.
MR. KARAVIDAS [Assistant State's Attorney]: State is ready to go to trial.
THE COURT: May I see the file?
Mr. Public Defender. We'll pass it. Let me know when you're ready. (Whereupon, the case was passed and recalled.)
THE CLERK: James Strompolis.
MR. DRDA [Assistant Public Defender]: The plea will be not guilty. Waive a jury.
(Whereupon, all parties were sworn.)
MR. DRDA: Your Honor, if the state is going to attempt to amend the complaint  I base my defense on the complaint as charged.
MR. KARAVIDAS: He's going  we're going to add another charge. Do you want me to amend this one? What would you like me to do?
MR. DRDA: Add another one. I would still ask for a continuance or at least pass it. I haven't had time to talk to the defendant on this additional charge.
THE COURT: State might ask for a high bond on the second charge.
MR. DRDA: That's up to the Court's discretion.
THE COURT: What is the original charge? Unlawful use? Failure to register.
MR. KARAVIDAS: The charge is unlawful possession of a firearm, judge. Under 38, 24-3.14.
THE COURT: What's the additional charge?
MR. KARAVIDAS: We're going to add a charge of 24-1a4, carrying concealed in a motor vehicle.
MR. DRDA: All right, your Honor.
MR. KARAVIDAS: Here is a copy of the complaint of charges against you.
MR. DRDA: It's not properly described or sworn to. Not properly sworn to at this time.
THE COURT: Not properly sworn to.
MR. DRDA: Yes, your Honor. The complaint has to be properly described and sworn to. (Whereupon the complainant was sworn to the complaint.)
MR. KARAVIDAS: Now, we're ready.
MR. DRDA: We're ready.
MR. KARAVIDAS: Ready for trial.
THE COURT: Leave to file has been granted.

*294 MR. KARAVIDAS: Okay.
MR. DRDA: Two charges?
MR. KARAVIDAS: Yes. Okay. Now, we're going to nolle the one charge. Nolle the original charge. Proceed on this charge.
MR. DRDA: On the U.U.W?
MR. KARAVIDAS: Yes.
THE CLERK: Sheet 1 line 30, nolle.
MR. KARAVIDAS: Have the parties been sworn in?
THE CLERK: They have been sworn in.
MR. KARAVIDAS: What's the plea to the charge?
MR. DRDA: The plea is not guilty, your Honor.
MR. KARAVIDAS: Wish to be tried by this Court?
MR. DRDA: Waive the jury.
MR. KARAVIDAS: Mr. Strompolis?
THE DEFENDANT: This man is representing me.
MR. KARAVIDAS: Okay."
The record discloses that the original complaint charged defendant with being a narcotic addict having unlawful possession of a firearm in violation of Ill. Rev. Stat. 1969, ch. 38, par. 24-3.1(a) (4). The public defender was handed the file on the case immediately before the trial was to begin. To allow the public defender to familiarize himself with the matter he was shortly to try, the case was temporarily passed. After the case was recalled the public defender entered a plea of not guilty and waived a jury trial. He was then informed that the State was going to amend its original complaint, adding the charge of carrying a concealed weapon in a vehicle. Although the public defender requested a continuance to enable him to confer with defendant on the additional charge, he did not persist in that request after the court pointed out the possible consequences. The public defender, after seeing to it that the complaint was properly sworn, said that he was ready for trial. The court then granted leave to file the amended complaint whereupon a nolle prosequi was entered with respect to the original charge. Then, on behalf of defendant, the public defender entered a plea of not guilty and waived a jury trial. Defendant, upon inquiry of the prosecutor, expressly ratified the actions of his attorney.[3]
 6 In reply to defendant's contention the State relies heavily on People v. Sailor (1969), 43 Ill.2d 256. Sailor held that a defendant is bound by *295 his attorney's actions when the attorney, in the presence of and without objection by defendant, waives defendant's right to a jury trial. That decision has, however, been distinguished by People v. Baker (1969), 126 Ill. App.2d 1, 6 to apply only to those situations where a defendant has an opportunity for meaningful consultation with his attorney. Although the Baker rationale warrants our careful consideration it is distinguishable under the facts of the instant case. Here the public defender had an opportunity to review the matter he was shortly to try while the case was temporarily passed. Then, after the case was called again, the State added a new charge and entered a nolle prosequi to the original charge. Although public defender had no opportunity for anything but hurried consultation with defendant prior to the arraignment and jury waiver on the new charge, he had ample opportunity to consult with defendant when the case was originally passed, and at that time was undoubtedly told defendant's version of the facts leading up to his arrest. In many situations consultation between attorney and client on one charge could not be adequate when trial is had on another charge, but here, where the charges are of such a similar character, the earlier discussion constituted a sufficiently intelligent basis upon which defendant's right to a jury trial could be waived. This conclusion is substantiated by defendant's comment "This man is representing me" made immediately after the public defender waived a jury trial on the second charge. We, therefore, find no basis for defendant's contention that he did not knowingly and understandingly waive his right to a jury trial.
In defendant's last contention he urges reversal of his conviction on the grounds that his appointed counsel was incompetent. The basis of that contention lies in purported errors made by counsel during the trial of his case, the first of which being defense counsel's failure to move to suppress the shotgun at the close of the State's case.
Officer Farrar testified on direct examination that he recovered a shotgun from the inside panel of the door of a car defendant was driving. The prosecutor then tendered the witness to defense counsel for cross-examination. Defendant contends that at this point a motion to suppress the shotgun should have been made and would have been successful. With the shotgun suppressed a motion for a directed verdict would have brought about defendant's acquittal. We do not agree with defendant's theory.
 7-8 Although a motion to suppress may be made during the course of trial, (Ill. Rev. Stat. 1969, ch. 38, par. 114-12(c)), the burden of proof in proceedings on such motion is upon defendant. (People v. Wright (1969), 42 Ill.2d 457, 460.) Thus, defendant would have had to *296 demonstrate the unreasonable character of the search. This could have been impossible in light of the later testimony of Farrar that the weapon fell from the door panel into the plain view of himself and other officers as they watched defendant get out of the car. The weapon therefore was subject to seizure and introduction into evidence. (Harris v. United States (1968), 390 U.S. 234, 236; Ker v. California (1963), 374 U.S. 23, 43.) The fact that this testimony was brought out by the defense on cross-examination to Farrar is of no moment because it would undoubtedly have been brought out at the hearing on a motion to suppress. Therefore, being unable to suppress the weapon, a motion for a directed verdict would not have led to defendant's acquittal.
 9 The defendant's contention that his trial counsel was incompetent is also based upon the proposition that the defense counsel proved the State's case. This contention is unsound. The direct testimony of Farrar clearly established that defendant carried a shotgun concealed in the door panel of his vehicle which, if credible, was sufficient to sustain defendant's conviction unless defendant could show that his conduct came within an exception, which he was not able to do.
 10 Lastly, defendant attempts to show his trial counsel's ineptitude, by contending that counsel's failure to call a witness to bolster defendant's credibility was improper. Defendant testified that when he received the shotgun from his sister the bolt was removed and that the weapon was given to the police in the same condition. The record does not disclose that defendant's sister was available, that counsel made no attempt to secure her or that she would have corroborated defendant's testimony. In People v. Morris (1954), 3 Ill.2d 437, 445, a case cited by defendant on appeal, it was pointed out that the reviewing court "does not consider facts outside the trial court's record * * *." Thus, there is no basis for defendant's contention in this regard.
The judgment of the trial court is affirmed.
Judgment affirmed.
ENGLISH, P.J., and DRUCKER, J., concur.
NOTES
[1] Ill. Rev. Stat. 1969, ch. 38, par. 24-1 provides:

"(a) A person commits the offense of unlawful use of weapons when he knowingly:
* * *
(4) Carries concealed in any vehicle or concealed on or about his person except when on his land or in his own abode or fixed place of business any pistol, revolver or other firearm; * * *."
[2] Ill. Rev. Stat. 1969, ch. 38, par. 24-2:

"(b) Subsection 24-1(a) (4) does not apply to or affect any of the following:
* * *
(4) Transportation of weapons broken down in a nonfunctioning state or not immediately accessible."
[3] Note that the penalty for the violation of Ill. Rev. Stat. 1969, ch. 38, par. 24-3.1 (a) (4), the original charge, is a fine not in excess of $1000 or imprisonment for not more than one year or both, while the penalty for the violation of Ill. Rev. Stat. 1969, ch. 38, par. 24-1(a) (4), the offense for which defendant was ultimately convicted, is a fine not in excess of $500 or imprisonment for not more than one year or both.