THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RUFUS KING, Defendant-Appellant.

(No. 53865;

First District—April 19, 1972.

Gerald W. Getty, Public Defender, of Chicago, (Everette A. Braden, Nunzio D. Tisci, and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Stephen R. Kramer, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE BURMAN delivered the opinion of the court:

The defendant, Rufus King, was convicted of the crime of burglary after a trial without a jury and sentenced to the penitentiary for not less than two nor more than eight years.

On appeal, he contends (1) he did not knowingly and understandingly waive his right to trial by jury and (2) he was not proven guilty beyond a reasonable doubt.

The defendant who was represented by the Public Defender was brought to trial along with four co-defendants on October 7, 1968. Defendant's counsel answered ready for trial and responded affirmatively when questioned by the trial judge as to whether the case would be tried before the court without a jury. Before jury waivers were signed the trial judge addressed the defendants as follows:

"The Court: Yes. Speaking to all of the Defendants, Mr. Forte, Mr. King, Mr. Lee, Mr. Kent, Mr. Glover, you gentlemen understand that you have a right to have your case tried by a jury of twelve people, and if you would like to have a bench trial you automatically do away with the right to have the case tried by a Jury; do you understand that? You have consulted with your attorney, and you want to take a bench trial, is that right? Handing to each one of your lawyers a Jury waiver, and each of you sign one of these then, indicating your waiver of the Jury and then pass it back to the Clerk."

After a brief exchange on an unrelated matter, the Public Defender on behalf of King and three other defendants returned the signed jury waivers to the Court.

The defendant initially contends that the record does not affirmatively show a knowing and understanding waiver of his right to a jury trial

since he did not orally indicate (1) that he understood the function of a jury (2) that he was aware of his right to trial by jury, and (3) that he waived that right.

██ The trial judge is under a duty to see that the election to forego a jury trial is expressly and understandingly made by the accused. (*People v. Surgeon,* 15 Ill.2d 236, 154 N.E.2d 253.) There is, however, no specific or defined formula which must be applied in ascertaining whether a waiver has been understandingly made. The determination, of necessity, must rest upon the facts of each particular case. (*People v. Wesley,* 30 Ill.2d 131, 195 N.E.2d 708.) In *People v. Sailor,* 43 Ill.2d 256, 253 N.E.2d 397, the defendant contended that the court failed in its duty to see that trial by jury was knowingly and understandingly made. This contention was rejected and the Court stated 43 Ill.2d at 260, 253 N.E.2d at 399:

> "The record reveals that defendant's counsel, in her presence and without objection on her part, expressly advised the court that the plea was 'not guilty' and that a jury was waived. An accused ordinarily speaks and acts through his attorney, who stands in the role of agent, and defendant, by permitting her attorney, in her presence and without objection, to waive her right to a jury trial is deemed to have acquiesced in, and to be bound by, his action."

██ In the instant case, the defendant was represented by an Assistant Public Defender who had been actively involved in the cause for at least two months prior to trial. When the matter was called on October 7, 1968, defense counsel indicated in the presence of the defendant that the case would be heard as a bench trial. The trial judge noted that the defendant had conferred with his attorney. He then explained the meaning of the defendant's right to trial by jury and suggested to the defendant that he sign a jury waiver if he wished to forego such a right. The defendant thereafter signed the jury waiver which was returned to the clerk. We conclude that the defendant's acquiescence in the request for a bench trial by his attorney coupled with the execution of the jury waiver after hearing an explanation of his right to a jury trial manifested a knowing and understanding waiver of the right to trial by jury. See *People v. Adorno,* 126 Ill.App.2d 98, 261 N.E.2d 443, and *People v. Strompolis,* 2 Ill.App.3d 289, 276 N.E.2d 464.

The cases cited by the defendant in which the Appellate Court held that trial by jury was not knowingly and understandingly waived are inapplicable on their facts. In *People v. Baker,* 126 Ill.App.2d 1, 262 N.E.2d 7, jury was waived by defense counsel, but the record did not show that the attorney who was appointed just prior to trial, had an opportunity to discuss the waiver of the jury with the defendant. In *People v. Rambo,*

123 Ill.App.2d 299, 260 N.E.2d 119, the defendant signed a jury waiver, but there was no overt expression of waiver either by the 16 year old defendant or by his counsel. In *People v. Bell,* 104 Ill.App.2d 479, 244 N.E.2d 321, the defendant indicated on the record that he did not understand the meaning of a trial by jury and no explanation of the right was made to him.

The defendant next contends that he was not proved guilty beyond a reasonable doubt because the testimony of the State's principal witness, a police officer, was vague and uncertain concerning his identification as one of the individuals arrested in the burglarized store. The record reveals that on April 5, 1968, the day of Martin Luther King's funeral, there were many fires and rioting on the west side of Chicago. At about 11:00 A.M. on that date, Jerry and Morry, Jewelers and Pawners, located at 4219 West Madison Street, was closed and locked. When the assistant credit manager of the business returned to the premises on the following day at 11:00 A.M., he discovered that the establishment had been burglarized. No authority was ever given to the defendant to enter the store while it was closed.

Officer Harold Saffold of the Chicago Police Department testified that at about 8:45 on April 5, 1968, he and two partners were travelling east on West Madison Street in a marked police vehicle when he observed people in the subject store. He got out of the vehicle and noticed boxes piled beneath a window which had been broken. The doors to the store were closed and locked, and he and other officers proceeded into the premises through the window. Upon their entry he saw merchandise strewn about the floor and people running away from the window. Whereupon they rounded up the individuals who had been running and he discovered three more persons in a closet. He then placed the persons in the store under arrest. Thereafter, the police officers and the arrested men exited from the store through the window. At trial he was asked, "Now, I ask you, Officer, whether or not you see anyone else in the courtroom that you placed under arrest in the store that evening?" He than answered, "Yes, sir, I see four other individuals," and he pointed out Rufus King and the three co-defendants.

In support of his contention that he was not proved guilty beyond a reasonable doubt and that his identification was vague and uncertain, the defendant points out that when Officer Saffold was asked on cross-examination whether he arrested the defendant, he answered, "He was in the group, yes," and he argues "It is not definitely established where the officer had seen the defendant in the group." This argument is without merit because it is clear from the officer's testimony on direct ex-

amination that he pointed out Rufus King as one of the persons whom he arrested in the jewelry store on April 5, 1968.

■■■ It is further argued that the officer's testimony before the grand jury was inconsistent with his testimony at trial. While a witness before the grand jury, Officer Saffold was asked whether he arrested "Morris, Forte, Lee, Kent and Jernigan" on April 5, 1968. He responded to the question with one word, "Yes." At trial, Saffold testified that he arrested King among others in the building on the night in question. There is nothing materially inconsistent between his testimony before the grand jury and at trial. The record, in contrast to the defendant's assertion, establishes that Saffold's identification of Rufus King as one of the persons he arrested in the store was clear and unequivocal. The fact (1) that the officer viewed photographs of King prior to trial and (2) that King was sitting next to co-defendants when identified in court does not in any way weaken the clarity and certainty of Saffold's identification testimony.

■■■ It is also pointed out that there were other police officers present at the time of the defendant's arrest, yet these officers were never called to testify at trial. The State is not obligated to produce every witness to a crime, and failure to produce a witness does not give rise to a presumption that the testimony of that witness would be unfavorable to the prosecution. (*People v. Jones,* 30 Ill.2d 186, 195 N.E.2d 698.) The failure of the State to present evidence available to it may be considered in viewing the credibility of the evidence, but argument based upon such a circumstance is better presented to the trier of facts which is charged with the duty of weighing and evaluating the evidence. (*People v. Scott,* 38 Ill.2d 302, 231 N.E.2d 441.) Furthermore, it must be noted that the defendant knew the names of all the officers present at the time of his arrest since prior to trial, a witness list was tendered.

■■■ Officer Saffold testified that he arrested the defendant inside the burglarized premises, while the defendant stated that he was arrested by another police officer while he was in the vicinity of an alley just south of the premises. It is well settled that the testimony of a single witness, if it is positive and the witness credible is sufficient to convict even though it is contradicted by the accused. (*People v. Clarke,* 50 Ill.2d 104, 277 N.E.2d 866.) The conflict in the testimony between the State's witness and the defendant was a matter properly resolved by the trial judge. Where the cause is tried without a jury, it is the function of the trial court to determine the credibility of the witnesses and the weight to be afforded their testimony, and where the evidence is merely conflicting, a reviewing court will not substitute its judgment for that of

the trier of fact. *People v. Clark*, 30 Ill.2d 216, 195 N.E.2d 631, *People v. Coleman*, 49 Ill.2d 565, 276 N.E.2d 721.

■■ The defendant finally argues that the questions posed by the trial judge at the hearing in aggravation and mitigation indicate that the judge had a reasonable doubt of his guilt even after making a finding of guilty. This argument is not supported by the record. Each of the defendants made an application for probation after the judge made his finding. The cause was continued for two weeks for the preparation of a pre-sentence investigation to each defendant. When two weeks later the matter was called for sentencing, the judge after reviewing the pre-sentence investigation heard argument from the prosecution and defense counsel. He then asked the defendants what they had to say and cautioned them to tell the truth. In response Joe Glover stated to the Court that he had never been in the store. The following colloquy then occurred:

"The Court: Mr. King, what do you have to say?

Mr. Rufus King: I'm guilty. That's all.

The Court: You don't have anything else to say?

Mr. Rufus King: I am guilty."

The questions posed do not indicate that the trial judge entertained a reasonable doubt of the defendant's guilt. The Court, in making inquiries, properly gave the defendants an opportunity to speak for themselves before being sentenced.

For the reasons stated, the judgment of the Circuit Court is affirmed.

Judgment affirmed.

DIERINGER, P. J., and ADESKO, J., concur.