THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* THOMAS PIERCE, JR., Defendant-Appellant.

(No. 57909;

First District (2nd Division)—February 11, 1975.

Allan A. Ackerman, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Edward J. Ozog, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE DOWNING delivered the opinion of the court:

The appellant, Thomas Pierce, Jr. (hereinafter defendant), was indicted for the offenses of indecent liberties with a child (Ill. Rev. Stat. 1969, ch. 38, par. 11—4(a)(3)) and contributing to the sexual delinquency of a child (Ill. Rev. Stat. 1969, ch. 38, par. 11—5(a)(3). After a jury trial in the court below, defendant was found guilty of having committed both offenses and was sentenced to a term of 4 to 15 years in the penitentiary.

An appeal bond was set in the amount of $100,000. Subsequently, defendant's bond was revoked on a petition of the Cook County State's attorney's office, and defendant appealed to this court the order revoking his bond. As part of that appeal, defendant further requested an order directing a clarification by the trial court of the sentence imposed. On August 2, 1973, this court ordered the trial court to clarify the judgment rendered by indicating upon which count the sentence had been imposed, and the order revoking defendant's bond was reversed and remanded with directions to conduct a hearing concerning defendant's eligibility for bail.

The trial court, on August 15, 1973, conducted a hearing and resentenced defendant to a term of 4 to 15 years in the penitentiary for the offense of indecent liberties with a child. In addition, the trial court held that the count which had charged contributing to the sexual delinquency of a child merged into the count which had charged indecent liberties, and, accordingly, no sentence was imposed on the contributing count. After a bail hearing had been conducted, appeal bond was denied.

The issues presented for review on appeal are:

1) whether suggestive identification procedures were employed by the police where the victim identified defendant's photograph from a book of photographs of individuals whose description approximated defendant's;

2) whether, prior to arrest, evidence of defendant's flight from a police officer was a circumstance to be considered by the jury;

3) whether comments made by the prosecutors in closing arguments constituted prejudicial error;

4) whether the jury was properly instructed on the offenses charged in the indictment;

5) whether defendant was proven guilty beyond a reasonable doubt of the crimes of indecent liberties with a child and contributing to the sexual delinquency of a child, as charged in the indictment; and

6) whether the trial court erred in failing to require a psychiatric examination of defendant, pursuant to statutory requirement (Ill. Rev. Stat. 1971, ch. 23, par. 2402), where defendant raises the issue for the first time in his reply brief on appeal to this court.

Prior to the commencement of defendant's trial, counsel for the defense filed a written motion, accompanied by affidavit, seeking to prevent the State from introducing evidence concerning the circumstances of defendant's arrest on March 19, 1971. Additionally, the defense filed a written motion to suppress the pretrial identification of defendant by the complainant. The testimony regarding each of these motions was as follows.

The trial court heard arguments on the admissibility of the testimony of a Chicago police officer, John Fleming, with respect to defendant's arrest on March 19, 1971. The officer testified that, on the day of defendant's arrest, he had been working in a marked beat car in the vicinity of Waveland and Lavergne Avenues in Chicago. At approximately 3 P.M., he received an assignment to proceed to the intersection of the two avenues. Upon his arrival there, he left his squad car and engaged in a conversation with one Mary Cashman, during which the officer observed a motor vehicle near his location, which was stopped and which was occupied by a single individual. The vehicle began to move away a few seconds after the officer's initial observation, and the officer began a pursuit of the vehicle. Officer Fleming gave chase for approximately 15 minutes, from time to time losing sight of the vehicle. After having observed the license number of the vehicle, the officer went to an address at 5255 West Henderson in Chicago, and, upon his arrival, spoke with defendant's wife and mother. After a search, the officer found defendant hiding, in a crouched position, in a hollowed-out kitchen cabinet in an apartment in the building. The officer identified defendant as the man whom he had chased and had found hiding in the kitchen cabinet. The trial court ruled that the defendant's flight was a circumstance which could be considered by the jury.

With respect to the motion to suppress the complainant's[1] pretrial identification of defendant, the defense called Chicago Police Department Investigator William Havansek. At the time of the commission of the alleged offense, March 6, 1971, the investigator was assigned to the Area Five homicide and sex unit. On March 18, 1971, the investigator had interviewed the complainant and her parents concerning the alleged attack. On the same day, he had interviewed a friend of the complainant and her parents regarding the attack. During the interviews, Investigator Havansek had in his possession a report describing the attacker as a male, 5 feet 8 inches and 5 feet 10 inches in height, of an age between 20 and 25 years, who had worn a white shirt, a long black coat, and dark horn-rimmed glasses, and who had been described as having pimples on his face.

Investigator Havansek separately showed each girl, the friend and complainant, a mug book with photographs of known sex offenders on Chicago's northwest side. Each girl individually identified defendant, from his photograph in the book, as complainant's attacker.

At the time of the interviews, there were approximately eight books in the police station filled with such photographs. From the eight books, Investigator Havansek selected one book for the complainant to look through, and she paged through it while the investigator sat next to her. After she had paged through approximately 30 to 35 pages of the 50-page book without having identified her attacker, Investigator Havansek turned the pages of the book back to pages 24 and 25. When the book is opened to any page, it lies flat, and the photos on the opposite page can be seen. There were four photos on each page, and, on pages 24 and 25 of this particular book, there were eight separate photos of eight separate male individuals, either Caucasians or Mexicans, depicted in mid-torso and full-length photographic shots.

After Investigator Havansek turned to pages 24 and 25, the complainant immediately picked out the defendant—whose photo was on page 24—as her attacker. She identified defendant despite the fact that the photo depicted defendant without glasses. The investigator denied that he had pointed out the photo of defendant for complainant. He stated that the reason that he had turned the pages back to 24 and 25 was the fact that the friend had previously picked out the photo of defendant. When the friend had viewed the book, he testified, she had not gone past page 24, identifying defendant's photo immediately upon coming across it.

---

[1] The complainant and her girl friend, both of whom were of tender age at the time of the alleged incident and at trial, will not be identified by name in this opinion. Rather, they will be referred to as the "complainant" and "friend."

The trial court, after having heard the investigator's testimony, denied defendant's motion to suppress, indicating that he did not feel the actions of the investigator had been unduly suggestive.

The testimony at defendant's trial in December, 1971, can be summarized as follows. The friend, 9 years of age at the time of trial, testified that in the late afternoon, on March 6, 1971, she and the complainant had been playing in the snow in front of the complainant's house, when defendant, who was identified by the witness in court, approached the two and asked that they help him look for his lost cat; that the girls accepted the invitation and walked a distance down the block with the defendant, who then said that he had just seen the cat; that defendant told the girls to follow him as he drove his auto down the street; that defendant entered his auto and the girls ran behind the car until it turned into a nearby alley; that defendant and the girls then walked down the alley a short distance, whereupon defendant said that they should split up; that he told the friend to walk down the alley while he would take the complainant with him; that, thereafter the friend looked for the complainant for about 20 minutes, but was unable to find her; that, after the interval, when the two met, the complainant had "pointed and told me where Thomas Pierce touched her"; and that she had never seen defendant prior to the incident, nor did she know his name prior to the incident.

The complainant, 8 years of age at the time of the trial, testified that on March 6, 1971, she and her friend were playing in the snow on her father's car in front of her home; that while they were playing, defendant, whom she identified in court, approached them and asked whether they would like to help him look for his cat; that both she and her friend said they wanted to look for the cat and followed the defendant through several yards in search of the cat; that defendant then said that he thought he had seen the cat; that defendant then got into his car and drove up the block, followed by the two girls; that after entering an alley, defendant suggested that they split up; that defendant then took complainant into a gangway and down some stairs; that defendant then told her to look through a hole where he said he had seen the cat; that, thereafter, defendant told her to kneel and, after she had done so, defendant told her to lie down, which she did; that defendant then ordered her to pull her hat down over her eyes; and that defendant then placed his coat over the complainant.

On direct examination of the complainant, the following colloquy then ensued:

"Q. What if anything happened then?
A. He touched my stomach.

Q. I want you to try and remember exactly what happened. What happened after you were laying down.

A. He touched my stomach and my privates."

Complainant further testified that she was kept down in the basement stairwell for about 10 minutes, whereupon defendant heard someone on the porch above and left the scene, saying he was going to look for the friend. Thereafter, the complainant searched for her friend. Upon finding her, the complainant looked under her pants to see if there was a mark where defendant had touched her. For the record, the complainant identified her stomach as the middle portion of her torso and identified her privates as the crotch area of her person.

The mother of the complainant testified that on the day of the occurrence the complainant had returned home with her mittens off. After a brief conversation with her daughter, the mother phoned the police.

Officer Fleming's testimony before the jury, as well as that of Investigator Havansek, was substantially the same as that given before the trial court upon the motions, which are described above.

## I.

Defendant first contends that the pretrial photographic identification procedures employed in the case at bar were so unnecessarily suggestive that their employment warrant a reversal of the trial court's order denying defendant's motion to suppress. Defendant founds his claim upon the actions of the interviewing police officer, Investigator Havansek, who, defendant claims, employed unnecessarily suggestive procedures in that he permitted the complainant to freely page through a book containing photos of known sex offenders and, then, turned the pages back to pages 24 and 25, one of which displayed a photo of defendant.

■■ This state's supreme court in *People v. Brown* (1972), 52 Ill.2d 94, 285 N.E.2d 1, addressed itself to the issue under consideration, and stated, at page 99 of the opinion:

"The practice of showing photographs of suspects to witnesses is essential to effective law enforcement. The dangers inherent in the practice have been recognized by the United States Supreme Court, but nevertheless, initial identification by photograph has its approval. The Court has held that each case must be considered on its own facts, and that convictions based on in-court identifications following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

*Simmons v. United States* (1968), 390 U.S. 377, 382-385, 19 L.Ed. 2d 1247, 88 S.Ct. 967."

The *Brown* and *Simmons* standards will guide us here. We now recount the salient portions of the evidence which we feel are pertinent to our resolution of the issue. The complainant and her friend examined the mug book independently of each other, separately, and they were told nothing regarding the progress of the police department's investigation. At the pretrial motion to suppress hearing and at trial, the description of pages 24 and 25 of the mug book was uncontroverted: The pages displayed eight photos of eight separate individuals; they depicted males, Caucasians and Mexicans, some of whom wore glasses, in mid-torso and full-length photographs. The individuals depicted approximated the description of complainant's attacker given to the police, *i.e.*, male, 5 feet 8 inches to 5 feet 10 inches, of an age between 20 and 25 years, who wore dark, horn-rimmed glasses and whose face had pimples. Further, Investigator Havansek, complainant and her mother all testified that the investigator at no time during his interview with complainant pointed out, or directed the complainant's attention to, defendant's photograph on page 24.

Both youngsters positively identified the defendant in court. The complainant had ample opportunity to view the defendant and to have his facial characteristics and dress impressed upon her mind, so as to be able to positively identify him as her attacker.

■■ Based upon these facts, and upon the totality of the circumstances as reflected in the record before us, we hold that the procedures utilized to identify the defendant by his photograph were not so "* * * impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 19 L.Ed.2d 1247, 1253, 88 S.Ct. 967.

II.

A.

Defendant next argues that the trial court erred in allowing the jury to consider evidence of defendant's flight from Officer Fleming on March 19, 1971, some 13 days after the day on which the alleged offenses were committed. Defendant urges that the trial court erroneously concluded that the evidence of flight showed consciousness of guilt and allowed the testimony for that purpose, but not as evidence. Further, defendant states that whatever probative value the evidence of flight might enjoy was far outweighed by its prejudicial nature and that the substance of the testimony regarding flight constituted inadmissible evidence of other crimes.

The State, on the contrary, argues that evidence of flight is a circumstance which may be introduced to show consciousness of guilt, and that, in the case at bar, only defendant's innuendos made the testimony concerning flight objectionable as evidence of other crimes.

■■ Evidence of flight from a police officer is competent evidence which may be considered by a jury with all other facts and circumstances tending to prove guilt. In *People v. Kidd* (1951), 410 Ill. 271, 102 N.E.2d 141, Mr. Justice Daily of our supreme court delineated the rule as follows, at page 277 of the opinion:

> "The fact that he attempted to prevent his arrest by flight, when approached by officers some days later, was competent evidence indicative of a guilty mind. (*Jamison v. People*, 145 Ill. 357.) However, the fact that he fled when approached by police officers, raises no legal presumption that he is guilty of the particular crime charged in the indictment. The fact of flight is a circumstance which may be considered by the jury in connection with all the other facts and circumstances in evidence as tending to prove guilt. (*People v. Weber*, 401 Ill. 584; *People v. Schaffner*, 382 Ill. 266; *People v. Herbert*, 361 Ill. 64.)"

Moreover, where the record, as here, does not contain evidence to show that a defendant attempted to flee for any reason other than consciousness of guilt of the offense of which he was convicted, the evidence is admissible. *People v. Harris* (1972), 52 Ill.2d 558, 561, 288 N.E.2d 385.

In our opinion, defendant's acts to avoid police apprehension merited consideration by the jury in relation to all the other facts and circumstances in evidence as tending to prove consciousness of guilt. We hold, therefore, that the trial court committed no error in ruling the evidence admissible.

### B.

■■ Defendant contends further on this point that the admission of Officer Fleming's testimony was erroneous in that it was evidence of other crimes, and, as such, constituted the admission of evidence prejudicial to defendant. However, from a thoroughgoing review of the record, it is clear that the trial court admitted the testimony not for the purpose of establishing evidence of other crimes, which would have been improper, but as probative on the question of defendant's consciousness of guilt. To support this argument, defendant relies upon *People v. Pazell* (1948), 399 Ill. 462, 78 N.E.2d 212. The court held in *Pazell* that in a prosecution for taking indecent liberties with a child, it is improper and prejudicial to introduce evidence showing that the defendant had

been guilty of similar practices upon others, as such evidence is not competent to prove intent in the actual offense charged and can only create prejudice in the minds of the jury against the defendant. The State, upon cross-examination of the defendant in *Pazell,* sought to determine whether defendant ever had any little girls other than the complainant in his house. In the case at bar, nothing approaching the situation in *Pazell* obtains. The only pertinent facts elicited were that Officer Fleming had a conversation with one Mary Cashman and that the conversation took place at Waveland and Lavergne in the vicinity of a grammar school. The content and purpose of the conversation were never revealed to the jury.

To reiterate, then, we hold that the trial court committed no error in admitting the testimony of Officer Fleming with respect to defendant's flight.

### III.

■■ Defendant further contends that he was prejudiced by certain remarks made by the prosecution during closing arguments in the case. The general rules pertaining to a prosecutor's argument are set forth in *People v. Halteman* (1956), 10 Ill.2d 74, 83-84, 139 N.E.2d 286:

> "Arguments and statements based on the facts appearing in the proof or on legitimate inferences deducible therefrom do not transcend the bounds of legitimate argument. (*People v. Hagenow,* 236 Ill. 514; *Crocker v. People,* 213 Ill. 287.) And only recently we reaffirmed our previous holdings to the effect that statements of counsel based upon the facts, or upon legitimate inferences deduced therefrom, do not transcend the bounds of debate and are not to be discountenanced by the courts. It is proper for the prosecuting attorney to reflect unfavorably on the accused and to denounce his wickedness and even indulge in invective. The State's Attorney has the right to dwell on the evil results of crime and to urge fearless administration of the law. (*People v. Lindsay,* 412 Ill. 472; *People v. Moore,* 9 Ill.2d 224.) While it is improper for the prosecutor to make statements the only effect of which is to inflame the passions or develop the prejudices of the jury without throwing any light upon the issues, he nevertheless has a right to denounce a defendant as guilty of the crime charged if the evidence fairly tends to prove his guilt, and to draw inferences unfavorable to defendant if based on the evidence."

■■ More recently, this court, in *People v. Johnson* (1st Dist. 1972), 5 Ill.App.3d 718, 721, 284 N.E.2d 48, stated:

"Improper comments and argument cannot be condoned, but they do not warrant the overturning of a jury verdict unless they represent a material factor in the conviction and unless the verdict could have been otherwise had the remark not been made. *People v. Davis,* 46 Ill.2d 554, 264 N.E.2d 140, *People v. Nicholls,* 42 Ill.2d 91, 245 N.E.2d 771, *People v. Naujokas,* 25 Ill.2d 32, 182 N.E.2d 700."

■■ Without recounting all of the allegedly prejudicial remarks to which the defendant assigns error, suffice it to say that it is our conclusion that the remarks here complained of were within the bounds of propriety and the proper scope of argument and were not so prejudicial to defendant as to require a reversal of the instant judgment.

## IV.

Defendant next argues that the jury was improperly instructed on the charges set forth in the indictments. We have examined the instructions given and refused, and we find that the trial court properly instructed the jury in this matter, as he was compelled to do pursuant to Supreme Court Rule 451(a). Ill. Rev. Stat. 1969, ch. 110A, par. 451(a).

## V.

Defendant next argues that he was not proven guilty beyond a reasonable doubt of the crimes of indecent liberties with a child and contributing to the sexual delinquency of a child, as charged in the indictment. His argument contains two separate theories: first, that he was not proven guilty beyond a reasonable doubt of the crimes, pursuant to sections 11—4(a)(3) and 11—5(a)(3), respectively, of Illinois' Criminal Code (Ill. Rev. Stat. 1969, ch. 38, pars. 11—4(a)(3) and 11—5(a)(3)); and, second, that each count of the indictment against him charged conjunctive crimes of indecent liberties and contributing to the sexual delinquency of a child, in that each count recited that defendant "lewdly fondled *and* touched" the complainant, whereas the statute's language requires "lewd fondling *or* touching." (Emphasis supplied.) We will deal with the latter proposition first.

■■ It has been held that while a charge which follows the language of a statute defining a crime and uses the disjunctive "or" will be sufficient to charge a defendant under some circumstances, it will not be sufficient where the statute names disparate and alternative acts, any one of which will constitute the offense. (*People v. Heard* (1970), 47 Ill.2d 501, 504, 266 N.E.2d 340.) The rationale behind the stated rule is that the use of the disjunctive under certain circumstances causes uncertainty and conjecture as to which of the alternatives the accused is

charged with committing. (*Heard,* at 505.) It is also a stated rule, however, that the use of the word "or" in an indictment, when the word is used not to connect two distinct facts of different natures but to characterize and include two or more phases of the same fact, attended with the same result, states but a single ground and not the alternative. (*People v. Lavendowski* (1928), 329 Ill. 223, 231, 160 N.E. 582.) The reasoning underpinning this last stated rule is that no person could be misled or misinformed with reference to the offense the indictment was intended to charge.

■■ Applying these principles to the matter at hand, we find that the instant indictments each stated a single ground for liability, as the conjunctive "and" characterized two phases of the same act, and the defendant could not have been misled or misinformed as to the offense which each indictment was intended to charge. See *People v. Cannon* (1st Dist. 1974), 18 Ill.App.3d 781, 310 N.E.2d 673.

With regard to defendant's second contention under this point—that he was not proven guilty beyond a reasonable doubt—we have reviewed the record thoroughly. We cannot find a basis in the record for saying that the verdict of the jury in this case was palpably contrary to the manifest weight of the evidence, so as to cause a reasonable doubt of defendant's guilt. (*People v. Daily* (1968), 41 Ill.2d 116, 242 N.E.2d 170, *cert. denied* (1969), 395 U.S. 966, 23 L.Ed.2d 752, 89 S.Ct. 2112.) The credibility of the witnesses and the resolution of the conflicting testimony was a matter for the trial court and the jury, and this court will not substitute its judgment for that of the court below. *People v. Wendt* (1st Dist. 1968), 104 Ill.App.2d 192, 202, 244 N.E.2d 384.

## VI.

Finally, defendant urges that the trial court erred in failing to require a psychiatric examination of defendant, pursuant to section 2 of "An Act to provide for trial in a circuit court and for a psychiatric examination of persons charged with sexual crimes against children" (Ill. Rev. Stat. 1971, ch. 23, par. 2402). Sections 1 and 2 of that Act provide as follows:

"§ 1. In all cases in which a person of the age of 17 years and upwards is charged with any violation of a statute or ordinance, the basis of the charge being a sexual crime against a child under the age of 13 years, the trial of such charge shall be in a circuit court.

§ 2. The judge of the court in which an indictment or information under Section 1 of this Act [ch. 23, par. 2401] is tried shall, before trial, require a psychiatric examination of the person charged. The examination shall be by two psychiatrists appointed by the

> court, who shall make a personal examination of the person charged and shall file with the court a report in writing of the result of their examination, a copy of which shall be delivered to the person charged."

It should be noted at the outset with regard to this point that the matter was at no time raised in the trial court, either prior to trial, in the pleadings filed in the trial court, or as part of defendant's post-trial motion filed subsequent to trial. The first mention of the matter was made in the closing portions of defendant's reply brief filed with this court on appeal.[2]

A thorough reading of the entire record on appeal reveals that defendant never claimed any protection or right under the provisions of the Act just recounted and that defendant never called to the trial court's attention, in any way, the right to—or the need for—a psychiatric examination as provided for in sections 1 and 2. The same was true of counsel for the State. Moreover, defendant, in presenting this belated argument on appeal, nowhere claims to have been prejudiced in any manner by virtue of the trial court's failure to require the examination.

In light of these circumstances, we find that defendant waived his right to raise this issue on appeal. (Ill. Rev. Stat. 1973, ch. 110A, pars. 341(e)(7) and 612(j).) In addition, we find that any error occasioned by the trial court's failure to implement the provisions of sections 1 and 2 was harmless in nature.

For these reasons, therefore, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

STAMOS and LEIGHTON, JJ., concur.

---

[2] After defendant filed his reply brief in this court, the State moved to strike this point from the reply brief. We took the motion under advisement pending argument and disposition of this case. Accordingly, we now deny the motion of the State to strike this point from defendant's reply brief.