THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROOSEVELT DANIELS *et al.*, Defendants-Appellants.

First District (5th Division)    No. 77-1348

Opinion filed December 15, 1978.

Lawrence Wolf Levin, of Chicago, for appellant Roosevelt Daniels.

Ralph Ruebner and Rosetta Hillary, both of State Appellate Defender's Office, of Chicago, for appellant Tyrone Guider.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Joseph P. Quirk, and John J. Moran, Jr., Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Following a jury trial, both defendants were found guilty of two counts of aggravated battery (Ill. Rev. Stat. 1973, ch. 38, par. 12—4), two counts of attempt murder (Ill. Rev. Stat. 1973, ch. 38, pars. 8—4 and 9—1), and two counts of aggravated kidnapping (Ill. Rev. Stat. 1973, ch. 38, par. 10—2). Guider was sentenced to a term of 5 to 15 years for the attempt murder and 5 to 15 years for aggravated battery, the sentences to run concurrently. Daniels was sentenced to a term of 10 to 30 years for the attempt murder and 10 to 30 years for the aggravated battery, the sentences to run concurrently. Although judgment was entered on the aggravated kidnapping verdicts, neither defendant was sentenced for that offense.

On appeal defendants contend: (1) they were not proved guilty beyond a reasonable doubt; (2) they were improperly sentenced for both aggravated battery and attempt murder; and (3) they were convicted of a crime for which they were not indicted contrary to article I, section 7 of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, §7). In addition, Daniels contends that the trial court erred in allowing the State to *nolle prosequi* several counts of aggravated battery after a prospective jury had been sworn. Finally, the State asks that the case be remanded for sentencing on the aggravated kidnapping verdict.

We affirm in part, reverse in part, and remand. The pertinent facts are as follows.

Prior to trial, the trial court read 11 indictments to a venire of prospective jurors. Among these charges were seven counts of aggravated battery, two counts of attempt murder and two counts of aggravated kidnapping. The Assistant State's Attorney and the court then had a brief discussion off the record. The trial court explained that these indictments

were merely the formal means of charging a person with a crime and were not to be considered as evidence of guilt by any of the veniremen should they be selected as jurors. The venire was further admonished about their role as jurors and then 12 were selected as jurors. The jury was then excused for lunch. Out of the presence of the jury, the State motioned to *nolle prosequi* six counts of aggravated battery relating to two counts each of deadly weapon, permanent disfigurement, and permanent disability. Defendant Daniels then motioned for a new venire panel, claiming the jury would be confused by the original reading of 11 counts. This motion was denied as was defendant's motion for a mistrial.

At trial, one of the complaining witnesses, Chuck Wallace, testified that on February 23, 1975, at about 11:30 p.m. he entered McGee's Tavern, located at 2756 West Harrison Street in Chicago. He used the restroom, remaining about three or four minutes, and then left with Clara McClinton. They exited through the front door and began to walk to Wallace's car, which was parked a short distance away. After taking a few steps outside, two men ran up behind him and placed a gun on both sides of his body. Wallace stated that he saw only the guns and could not see his assailants. He was ordered to turn around and walk to a parking lot about 100 feet away. Clara McClinton walked next to him. They approached a parked car, where the assailants opened the trunk and ordered both of them to get in. After the two got in the trunk, the lid was closed and the car drove off. After a short time, the car stopped. The occupants left the car and returned after a long time. They backed the car and then opened the trunk and ordered Wallace and Miss McClinton to get out. Wallace could not see who had opened the trunk. He and Miss McClinton were pushed against a wall in an alley or railroad yard. As they faced the wall, Wallace heard a shot and fell to the ground.

When he woke up, he could see Clara McClinton in front of him and he asked her if she was alright. She asked if their assailants had left. When Wallace saw that the car had left, they both got up and walked to the street. They stopped a bus which took them to Franklin Boulevard Hospital. A doctor later informed him that he had been shot in the head, the back, and the stomach. Wallace again stated that he never saw who ordered him into the car, removed him from the trunk, or shot him.

The other complaining witness, Clara McClinton, testified that on February 23, 1975, she arrived at McGee's Lounge with Chuck Wallace at about 9 p.m. Wallace left after about 30 minutes, but she remained for about two hours. Wallace returned at about 11:30 p.m., went to the rest room, and then left with her. After they had taken a few steps outside the tavern, she heard someone running up behind her. She turned and saw defendant, Roosevelt Daniels, holding a pistol. She had known Daniels'

name and who he was for about two months, although she did not know him personally. Daniels ran up and put the gun to Wallace's head and turned him around. At this time Miss McClinton could see Daniels' face. Daniels started walking with Wallace and told someone else, "Get the bitch." At this point another person, whom Miss McClinton could not see, put a gun in her back and said, "Let's go." They walked past the tavern to an alley just beyond the tavern. As they walked, Miss McClinton could see Roosevelt Daniels' face because of a street light in front of the tavern. When they reached the alley, a green and black car pulled up. Miss McClinton could see a woman and two men inside the car. The two men got out and came to the trunk of the car. The witness could identify one of these men as defendant Tyrone Guider. Earlier that evening she had seen Guider and Daniels standing outside the tavern through a large picture window. Guider opened the trunk and the victims were ordered to get in. The trunk lid was closed. The car was driven for about two minutes and then stopped. Miss McClinton could hear the doors slam. The car was then driven for about half an hour longer and again stopped. Miss McClinton could hear someone get out and about one minute later someone got in the car. She heard nothing else for 4½ to five hours. Then someone got in the car and the car began moving again. After about 20 to 25 minutes, the car stopped. She could hear two voices outside the car. The trunk was opened and they were ordered to face the wall. She could not see the individuals who let her out of the trunk. As she and Wallace faced the wall, they were shot. They awoke later and went to the hospital as Mr. Wallace had testified. Miss McClinton had been shot in the head and back.

The next day, February 24, 1975, she told police officers that Roosevelt Daniels was involved in the incident. That evening, she was shown six photos including ones of Roosevelt Daniels and Tyrone Guider. She identified Roosevelt Daniels as one of her assailants and stated that the photograph of Tyrone Guider "looks like the guy with him."

She further testified that on April 30, 1975, while in court for a preliminary hearing on this matter, she saw Roosevelt Daniels and two other persons, one of them Tyrone Guider, enter the courtroom. She turned to Officer Cronin and pointed to the rear of the courtroom and said, "There is one of the guys with him," indicating Tyrone Guider. Guider turned and left the courtroom. Miss McClinton was shown the six photographs she was shown on February 24, 1975, and she again picked the photos she had earlier identified.

Investigator Steven Barnas testified that he was a Chicago police officer investigating the shooting. He went to Franklin Boulevard Hospital and spoke to Miss McClinton on February 24, 1975. She told him that

Roosevelt Daniels was involved. Officer Barnas showed her six photos, from which she picked Daniels and Guider, although she couldn't be positive about Guider. She also told Officer Barnas that about four males forced her into the car.

Officer Michael Cronin testified that on April 30, 1975, he was at a preliminary hearing with Miss McClinton, when Roosevelt Daniels and Tyrone Guider entered the courtroom. After Miss McClinton spoke with Cronin for a moment, he saw Daniels and Guider leave the courtroom. Cronin followed but could not find them. Guider was later arrested on May 2, 1975.

The medical testimony of Dr. Tarnoff was introduced to prove the nature of the injuries suffered by Wallace and Miss McClinton.

Following the State's presentation of evidence, the defense moved for a directed verdict. This motion was denied.

The defense called two witnesses, Officer Cool and Officer Kozial, police officers who investigated the shootings. They testified that they arrived at the hospital at about 6 a.m. on February 24, 1975, and attempted to speak with Clara McClinton and Chuck Wallace. They were unable to communicate with Miss McClinton, apparently because of her condition. Neither Wallace nor Miss McClinton provided any names of their assailants or any description.

At the close of all the evidence, the defense again moved for a directed verdict and the motion was denied.

The jury found both defendants guilty of the aggravated kidnapping, aggravated battery and attempt murder charges. Judgment was entered on all the verdicts, but sentences were imposed for the aggravated battery and attempt murder only. It is from this judgment that defendants appeal.

Opinion

Defendants first contend that they were not proved guilty beyond a reasonable doubt. We agree with them in part and reverse the aggravated bwttery and attempt murder convictions, but affirm the aggravated kidnapping conviction.

A positive identification by a single witness with ample opportunity to observe is sufficient to support a conviction. (*People v. Clarke* (1971), 50 Ill. 2d 104, 277 N.E.2d 866; *People v. Williams* (1975), 60 Ill. 2d 1, 322 N.E.2d 819.) Concerning defendant Daniels, Miss McClinton testified that when she turned to see who was running up behind her, she saw Roosevelt Daniels. As they were forced to the alley, Miss McClinton had further opportunity to see Daniels. There was a street lamp in front of the tavern to aid Miss McClinton in her identification. She had known who Daniels was for about two months. The next day she told Officer Barnas

that Daniels was involved and picked Daniels' picture from a group of six photographs. She also identified him at trial as her attacker.

Concerning defendant Guider the identification was less positive but still sufficient to prove the aggravated kidnapping charge beyond a reasonable doubt. Although Miss McClinton did not know Guider's name, she had observed him in the area on several prior occasions and had seen him with Daniels earlier that evening. When shown a group of six photos she picked Guider's photo and stated that it "looks like the guy with him [Daniels]." At Daniels' preliminary hearing, and again at trial, she positively identified Guider as the man who opened the trunk of the car.

■■ The sufficiency of an eyewitness identification is a matter for determination by the trier of fact and reversal of a conviction is not warranted unless the testimony is so unsatisfactory as to leave a reasonable doubt as to the guilt of the accused. (*People v. Rogers* (1974), 23 Ill. App. 3d 115, 318 N.E.2d 715; *People v. Parson* (1975), 33 Ill. App. 3d 827, 341 N.E.2d 744.) We feel that Miss McClinton's identification of both defendants was positive, convincing and sufficient to sustain their conviction for aggravated kidnapping, and will not reverse the jury's verdict as to that offense.

■■ However, the aggravated battery and attempt murder convictions must be reversed. There was no direct evidence presented at trial that linked defendants to the shootings. Both victims testified that they did not see who opened the trunk, who was present, or who shot them. Although Miss McClinton heard two voices when the car stopped for the final time, she did not identify either of them as the defendants. There were no other witnesses or any physical evidence to link defendants to the shootings.

■■ The State urges that defendants are responsible for the attempt murders and aggravated batteries on an accountability theory under section 5—2(c) of the Criminal Code of 1961. (Ill. Rev. Stat. 1973, ch. 38, par. 5—2(c).) In order to prove accountability under this section of the Criminal Code, the State must prove beyond a reasonable doubt that: (1) defendants solicited, aided, abetted, agreed or attempted to aid another person in the planning or commission of the offenses; (2) this participation must have taken place either before or during the commission of the offenses; and (3) it must have been with the concurrent, specific intent to promote or facilitate the commission of the offenses. *People v. Ramirez* (1968), 93 Ill. App. 2d 404, 236 N.E.2d 284; *People v. Tillman* (1971), 130 Ill. App. 2d 2d 743, 265 N.E.2d 904.

It is not enough to show that defendants' acts facilitated the commission of the later offenses by another. Rather, the State must prove beyond a reasonable doubt that whatever conduct facilitated the later

offense was done with the intent that such offense be committed. *People v. Brumbeloe* (1968), 97 Ill. App. 2d 370, 240 N.E.2d 150; *People v. Tillman* (1971), 130 Ill. App. 2d 743, 265 N.E.2d 904.

■ The evidence is entirely circumstantial as to the offenses of aggravated battery and attempt murder. The State argues that it is a reasonable inference that the persons who forced others into the trunk of a car at gunpoint did so for the purpose of shooting them, and in fact did so. We agree that that is a reasonable inference. However, to justify a conviction, circumstantial evidence must produce a reasonable and moral certainty that the accused committed the crime. *People v. Magnafichi* (1956), 9 Ill. 2d 169, 137 N.E.2d 256; *People v. Curtis* (1977), 45 Ill. App. 3d 771, 360 N.E.2d 122.

■ The rule for review of a conviction based on circumstantial evidence was stated in *People v. Harris* (1975), 34 Ill. App. 3d 906, 340 N.E.2d 327, *cert. denied*, 429 U.S. 1002, 50 L. Ed. 2d 614, 97 S. Ct. 534 (1976), and later followed in *People v. Wright* (1976), 43 Ill. App. 3d 458, 357 N.E.2d 224, as follows:

> "The rule is that to support a conviction based on circumstantial evidence, the facts produced must not only be consistent with defendant's guilt, but they must also be inconsistent with any reasonable hypothesis of innocence. Such proof need not be beyond the possibility of a doubt [citations], and may be inferred from the circumstances proved. [Citation.] This rule does not contemplate that the trier of fact is required to search out a series of potential explanations compatible with innocence and elevate them to the status of a reasonable doubt, but a jury's verdict will be reversed on grounds of insufficient evidence where there is a reasonable and well founded doubt of guilt and the verdict is found to be palpably contrary to the weight of the evidence. [Citation.]" *People v. Harris* (1975), 34 Ill. App. 3d 906, 908.

We here find there is a reasonable doubt about defendants' guilt as to the offenses of aggravated battery and attempt murder. There is no evidence that when defendants kidnapped the victim that they did so with the intent or design that they be shot. A member of a group can become accountable for acts committed by other members of the group in furtherance of a common purpose, or as a natural or probable consequence thereof, even though he did not participate in the overt act itself. (*People v. Morgan* (1976), 39 Ill. App. 3d 588, 350 N.E.2d 27, *aff'd* (1977), 67 Ill. 2d 1, 364 N.E.2d 56, *cert. denied*, 434 U.S. 927, 54 L. Ed. 2d 287, 98 S. Ct. 411 (1977); *People v. Rybka* (1959), 16 Ill. 2d 394, 158 N.E.2d 17.) However, no common design was shown nor is a shooting the natural or probable consequence of a kidnapping.

In addition to the failure to prove defendants' presence at the shootings, several other factors raise a reasonable doubt of guilt. About

five hours transpired between the kidnapping and the shootings. Miss McClinton testified that there were two males and a female in the car when it approached. Officer Barnas testified that Miss McClinton had told him that four males were involved. After the victims were inside the trunk, the car stopped several times and the occupants got in and out several times. After being parked for approximately 4½ hours, the car again began to move. When it stopped Miss McClinton testified she heard two voices, which could have been any of the original occupants or someone else.

■■ The People argue that Guider's flight from Daniels' preliminary hearing after being identified by Miss McClinton is a strong indication of guilt. Although a defendant's flight may be considered with other evidence as tending to prove guilt (*People v. Stewart* (1966), 74 Ill. App. 2d 407, 221 N.E.2d 80; *People v. Washington* (1970), 121 Ill. App. 2d 174, 257 N.E.2d 190), Guider's exit from the courtroom is inconclusive and does not tend to prove the aggravated battery or attempt murder.

■■ A jury's verdict will not be disturbed unless the evidence is so improbable or unsatisfactory as to suggest a reasonable doubt of the defendant's guilt. (*People v. Benedik* (1974), 56 Ill. 2d 306, 307 N.E.2d 382; *People v. Reese* (1973), 54 Ill. 2d 51, 294 N.E.2d 288.) Although it may be a reasonable inference that the ones who placed the victims in the trunk were the ones who later removed and shot them, it is not proof beyond a reasonable doubt. The lack of proof of presence at the shooting site and intent at the time of the kidnapping, coupled with the apparent presence and opportunity for others to have committed the offenses, raises a reasonable doubt in our minds as to defendants' guilt. For these reasons, the defendants' convictions of the aggravated batteries and attempt murders are reversed.

Because of the reversal of the convictions of the attempt murders and aggravated batteries, it is unnecessary to address defendants' other contentions.

■■ Finally, the State asks that this cause be remanded for sentencing on the aggravated kidnapping convictions. It is within the scope of the appellate court's powers to remand the cause for sentencing on that offense in order to complete the circuit court's order and render the judgment final. (*People v. Scott* (1977), 69 Ill. 2d 85, 370 N.E.2d 540; *People v. Griffin* (1977), 56 Ill. App. 3d 255, 371 N.E.2d 1160.) Following those decisions, the cause is remanded to the circuit court for the imposition of a sentence on the aggravated kidnapping convictions of both Guider and Daniels.

Affirmed in part; reversed in part; and remanded with directions.

LORENZ and WILSON, JJ., concur.