THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RONALD WORLDS *et al.*, Defendants-Appellants.

First District (1st Division) Nos. 79-428, 79-429 cons.

Opinion filed January 21, 1980.

James J. Doherty, Public Defender, of Chicago (James L. Rhodes, Assistant Public Defender, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Mary Ellen Dienes, and Richard F. Burke, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

After a bench trial, Ronald Worlds and Zachary Worlds were found guilty of several offenses. Zachary was found guilty and sentenced for: unlawful use of weapons (Ill. Rev. Stat. 1977, ch. 38, par. 24—1(a)(4)), 60 days imprisonment; failure to carry firearm owner's identification card (Ill. Rev. Stat. 1977, ch. 38, par. 83—2(a)), 60 days imprisonment; theft of property valued at less than $150 (Ill. Rev. Stat. 1977, ch. 38, par. 16—1(d)), 60 days imprisonment; all terms to run concurrently. Ronald was found guilty of theft of property valued at less than $150 (Ill. Rev. Stat. 1977, ch. 38, par. 16—1(d)) and sentenced to 10 days imprisonment. Defendants have appealed.

We reverse each and all of these convictions.

On November 16, 1978, Zachary was driving his automobile in Chicago. The car stopped for lack of gasoline. The total of funds in Zachary's possession was 42¢. By telephone he requested his brother Ronald to meet him at a nearby gasoline station. Ronald obtained $1.05 from their mother and went to the station.

Zachary went to the station and asked an attendant with whom he was acquainted if he could get gasoline. Zachary went to a vacant lot next to the station, used as a dump for trash. There he found a discarded milk container in which to carry the gasoline. He also found and pocketed "a rusted gun." He testified he gave the attendant the 42¢ and the latter started to fill the jug.

Zachary testified the manager of the station then walked up to him, struck him with his fist and threw him to the ground. Zachary took the rusted gun out of his pocket and threw it at the manager. The manager testified Zachary was joined at that time by Ronald and Zachary used foul language to him, pointed the gun at him and threatened him. The manager testified categorically that he was not paid for the gasoline and the value of the amount taken was 81¢. Zachary and Ronald then left the station. The manager called the police. The defendants were arrested about a block from the station. They were attempting to start the automobile.

Ronald testified concerning the telephone call from Zachary. Ronald went to the station and saw Zachary pumping gas into a yellow container. He testified the manager of the station struck Zachary in the jaw and threw him down. He saw Zachary throw "a piece of gun" at the manager. Ronald also testified he paid 42¢ to some person at the station and this amount was the price of the gas as indicated on the pump.

Regarding the condition of the so-called gun, the police officer testified it was a .32 caliber pistol which was "a little rusty" and had no handle. The officer was unable to cock the gun and therefore could not

establish whether or not it was in operating condition. Zachary testified the gun was "rusted up real bad and the handle was bent." He stated the front of the nose and the barrel were all rusted. Apparently also the end of the gun was "bent off". The officer testified he discovered the gun when he searched Zachary. There is no direct evidence that Zachary did not have a firearm owner's identification card upon his person.

We note first that, immediately after the witnesses had been sworn, the trial court asked the State's Attorney if there was "Any background on these gentlemen?" The State's Attorney then recited that Ronald had previously been found guilty of theft and sentenced to 8 days. The trial court then asked for background as to Zachary. The State's Attorney responded that Zachary had two previous theft convictions. This was the second request that the trial court made for "background."

■■ This type of ascertainment of the possible criminal record of a defendant prior to commencement of trial is totally unacceptable to this court. The cases are clear in holding that a defendant who testifies in his own behalf may be impeached by certain prior convictions but then only by use of the actual record of the conviction or an authenticated copy thereof. (*People v. Kellas* (1979), 72 Ill. App. 3d 445, 450, 389 N.E.2d 1382.) Aside from this, the trial court elicited and received this information without the exercise of discretion regarding guidelines of competency of past convictions. See *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695.

■■ Information of this type thus obtained by the trial court prior to the commencement of trial is highly prejudicial and its use in this manner should not be countenanced. It is true that "[i]n a bench trial it is presumed that the trial judge has considered only competent evidence in reaching his verdict." (*People v. Gilbert* (1977), 68 Ill. 2d 252, 258, 369 N.E.2d 849. See also *People v. Berland* (1978), 74 Ill. 2d 286, 310, 385 N.E.2d 649.) However, in the case before us, the record shows strongly that this presumption should not be operative. This prejudicial matter was expressly called for and put into the record as to both defendants by two direct inquiries of the trial court. It would verge upon the ridiculous for us to say that the trial judge paid no attention to information which he himself expressly elicited. (See *People v. Wallenberg* (1962), 24 Ill. 2d 350, 354, 181 N.E.2d 143.) We regard this type of situation as comparable to one in which the trial judge engages in a private investigation. Compare *People v. Nelson* (1974), 58 Ill. 2d 61, 66-67, 317 N.E.2d 31.

■■ In our opinion, this infringement of the rights of the defendants constitutes sufficient reason to reverse each and all of the convictions and to remand for a new trial. But, the following observations require us to reverse the judgments appealed from.

■■ We find no evidence of wrongdoing by Ronald Worlds. His only part

in the transaction was to bring the money to his brother Zachary. At no time did Ronald aid, abet or attempt to aid his brother Zachary in the planning or commission of any offense. (Ill. Rev. Stat. 1977, ch. 38, par. 5—2(c); see also *People v. Robinson* (1974), 59 Ill. 2d 184, 192, 319 N.E.2d 772; *People v. Daniels* (1978), 67 Ill. App. 3d 663, 669, 384 N.E.2d 932.) It has been repeatedly held that mere presence at the scene of the crime even accompanied by flight, which is not present in the case before us, is not sufficient to sustain a conviction on the theory of accountability. *In re Woods* (1974), 20 Ill. App. 3d 641, 650, 314 N.E.2d 606, *appeal denied* (1974), 56 Ill. 2d 591.

On the issue of theft, there is evidence from the manager of the gasoline station that the price of the gasoline was not paid. On the contrary, both Ronald and Zachary testified that the price of the gasoline which appeared on the pump was, in fact, paid. In addition, the uncontradicted evidence shows that both defendants were impressed with the need for payment for the gasoline. That is why Zachary requested funds from Ronald and why Ronald obtained the necessary money and went to the station with the clear intent of making payment. Under these circumstances we conclude the evidence fails to show either of these defendants guilty of theft beyond a reasonable doubt.

As regards the offense of unlawful use of weapons, we are of the opinion that the so-called gun was in so decrepit a state because of rust and the absence of a handle that it could hardly be classified as a gun or as a dangerous weapon. The applicable statute setting out the exemptions from the crime of the unlawful use of weapons requires the gun to be "broken down in a non-functioning state." Ill. Rev. Stat. 1977, ch. 38, par. 24—2(b)(4).

In our opinion the statute requires that for the exemption to be applicable the gun must be not only nonfunctioning but also broken down. The words "broken down" refer to a disassembled weapon. (See *People v. Strompolis* (1971), 2 Ill. App. 3d 289, 292, 276 N.E.2d 464.) However, as appears from the testimony of the defendants and of the police officer, the gun was not in an operating condition and was in effect disassembled for lack of a handle. Therefore, it comes clearly within the phrase "broken down in a non-functioning state" which appears in the exemption portion of the statute. In our opinion, a broken and rusted gun in the condition evidenced by this record is not a deadly weapon within the purview of the pertinent statute.

Finally, as regards the crime of failure to obtain and be in possession of a firearm owner's identification card, as above shown, we find no direct evidence that Zachary did not have a card in his possession. In addition, the very fact that the defendant Zachary found the so-called gun in a heap of junk at the time of the incident demonstrates that it was

humanly impossible for him to obtain or to have the necessary identification. Also, we will assume that upon arrest of the defendant the police confiscated and destroyed the so-called gun. *De minimis non curat lex.*

Upon review of the evidence pertaining to each and all of the convictions of both defendants, we conclude that these convictions and each of them should be and they are hereby reversed.

Judgments reversed.

McGLOON and O'CONNOR, JJ., concur.