THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM DUNN, Defendant-Appellant.

First District (1st Division)   No. 81—494

Opinion filed August 24, 1987.

12

Anthony Pinelli and Michael Norris, both of Rolling Meadows, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., and Peter D. Fischer, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:

Following a jury trial, defendant, William Dunn, was convicted of rape, armed robbery, home invasion, and burglary. Defendant was sentenced to 10 years' imprisonment for burglary and to a term of 30 years' imprisonment for armed robbery, home invasion and rape, the sentences to run concurrently. Defendant appeals from the convictions, contending that (1) the State's introduction of evidence of other crimes denied him a fair trial; (2) evidence that the defendant refused to sign a medical consent form was improperly submitted; (3) the court erred in restricting the cross-examination of an accomplice witness regarding his prior juvenile convictions; (4) testimony by the accomplice witness that defendant had confessed was improperly admitted into evidence; and (5) he was not proven guilty beyond a reasonable doubt.

At trial, the victim testified that on the night of March 8, 1979, while asleep in the bedroom of her home in Mount Prospect, Illinois, she was awakened by someone placing a pillow over her face. As the pillow was being pushed on her face, she looked out from under it and saw her son and a second man with a flashlight at the end of the bed. The man at the end of the bed was holding a red pipe in his hand. The man who pushed the pillow on her face ordered her to lie on her stomach and he then tied her hands behind her back. Although she never saw a knife, she felt something sharp pressed to her stomach. The victim twice asked her son if he was all right, to which he replied that he was. The man who had tied her up asked

where her money was and she told him. He was angered by the fact that she had only $20. The man went through the drawers in the bedroom and took the victim's rings. He instructed his companion to take the victim's son out of the room. He told the victim to roll over onto her back and he forced her to engage in acts of oral copulation and sexual intercourse. The second man reentered the room and the two men proceeded to cut a lampcord and tie the victim's hands and feet and gag her with a pair of her pantyhose. The men left the home and the victim was eventually able to free her hands and run to check on her children. At a police lineup, the victim was unable to physically identify the intruders but did identify the voice of defendant as the voice of the man who raped her.

The victim's son, who was nine years old at the time of trial, corroborated much of the testimony given by his mother. His testimony followed an examination by the court that he was competent to testify. He stated that on the evening of March 8, 1979, he went to bed and later that evening went to his mother's room to sleep in the bed next to her. He was awakened by a flashlight being shined in his face. He noticed a second man standing in the doorway to the bedroom. The man with the shorter hair tied his hands behind his back and took him out of the room. The same man asked him where his sister's room was and the victim's son showed him. The man entered the sister's room and removed money from her toy bank. The sister remained asleep. The man told the victim's son to get in his bed and he tied his hands behind his back, tied his feet together and put a gag over his mouth. At the police station, from a group of photographs, the victim's son identified the defendant as the man who had stayed in the room with his mother and Michael Hollander as the man who stayed with him. The victim's son was unable to identify either man at trial.

Michael Hollander testified that he had known the defendant for approximately six months prior to March 8, 1979. Hollander stated that he was charged in this case with burglary, armed robbery and home invasion and had entered into an agreement with the State to plead guilty to all charges and receive a sentence of six years in exchange for his testimony at defendant's trial. He testified that on March 8, 1979, he met with defendant and together they went to a home in Mount Prospect. Hollander stated that defendant knew the layout of the home because he had worked there and that there was a divorced woman living in the house. Hollander and the defendant broke into the home through a side door. Hollander was carrying a flashlight and a crowbar. As they entered the home, Hollander no-

ticed a woman and a little boy sleeping in one bedroom. They woke them up and the little boy became hysterical. Hollander and defendant began ripping out electrical cords and tied up the woman and the boy. Hollander left the room with the boy and stated that defendant told him he had raped the woman.

At the outset, we note that defendant has waived his first issue by failing to include it in his motion for a new trial and also has waived the third issue by failing both to raise an objection in the trial court and to include it in his motion for a new trial. As such, these issues are not properly before this court for review. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856; *People v. Woith* (1984), 126 Ill. App. 3d 817, 467 N.E.2d 614.) The underlying reasons for the waiver concept are to bring alleged errors to the attention of the trial judge and allow that judge an opportunity to correct them, to give the reviewing court the benefit of the judgment and comments of the court below, and to prevent unlimited litigation and unnecessary review of matters which could better be corrected in the court below. (*People v. Harrawood* (1978), 66 Ill. App. 3d 163, 383 N.E.2d 707.) These purposes were ill-served in this case. Since, however, we would find application of the waiver rule somewhat harsh in light of the facts before us, we will look beyond the defendant's waiver of these issues and examine the merits of the arguments.

The defendant first contends that the introduction of evidence of other crimes denied him a fair trial. Defendant argues that this evidence was introduced for the purpose of establishing defendant's propensity to commit crimes of this nature. At trial, two Mount Prospect police officers and Michael Hollander testified as to an attempted burglary of a home in Wilmette, Illinois, and identified defendant as one of the participants in the crime. Another witness, Phyllis Leavitt, testified that her home in Northbrook, Illinois, was invaded by two men and she was raped. Although she was unable to identify her attackers, Michael Hollander testified that he and defendant had committed the crime and provided details as to its commission. Defendant contends that this evidence was prejudicial and raises the grounds for a new trial. The State maintains that it introduced this testimony to show that the identification of defendant in the instant crime was correct in that the *modus operandi* was the same as in the other crimes. As in the case at bar, the other crimes occurred in the late evening to early morning hours, two men entered a bedroom where people were sleeping, a flashlight and a red pipe instrument were used, the victims were tied and gagged, the victims were robbed of money and jewels, and the women victims

were forced to perform sexual acts by one of the men.

While it is true that a defendant's guilt must be established by competent evidence, uninfluenced by bias or prejudice, evidence which is relevant and otherwise admissible need not be excluded because it may also have a tendency to prejudice the defendant. (*People v. Olivier* (1972), 3 Ill. App. 3d 872, 279 N.E.2d 363.) Evidence of other crimes is admissible, among other things, to show *modus operandi*, provided its probative value does not outweigh its prejudicial effect. (*People v. Lieberman* (1982), 107 Ill. App. 3d 949, 438 N.E.2d 516.) While two crimes need not be identical for *modus operandi* purposes, they generally should share highly distinctive characteristics. (*People v. Pavic* (1982), 104 Ill. App. 3d 436, 432 N.E.2d 1074.) The decision whether to admit or exclude such evidence is within the sound discretion of the trial court. (*People v. Houseton* (1986), 141 Ill. App. 3d 987, 480 N.E.2d 1354.) To the extent that evidence of other crimes strengthens the identification of a defendant, it is fulfilling its purpose under the principle of *modus operandi*. 141 Ill. App. 3d 987, 480 N.E.2d 1354.

■ In this case, the victim identified the defendant in a lineup by his voice and the victim's son identified the defendant from a photograph. Neither identified the defendant at trial. Under these circumstances, we believe the trial court's decision to allow evidence of other crimes was proper and within its discretion. When viewed in light of the difficulty of identifying defendant as the man who committed the crimes charged, in our judgment the *modus operandi* evidence of other offenses was sufficiently similar to the instant crime and was admissible for the purpose of identification.

■ Defendant further argues that the testimony by Michael Hollander that he was indicted for other crimes to which he pled guilty led the jury to believe defendant was also guilty of these offenses. We find this argument without merit. Our supreme court has stated that the trier of fact is entitled to be informed as to any promises of leniency that may have been made to a witness. (*People v. Norwood* (1973), 54 Ill. 2d 253, 296 N.E.2d 852.) Therefore, the disclosure of Hollander's agreement with the State to plead guilty to all charges in return for a six-year prison sentence was proper.

■ The defendant also argues that the testimony given by the State's witnesses, a United States Marshall and two Cook County correctional officers, as to defendant's escape from jail was improper. During the pendency of this case, defendant escaped from Cook County jail and traveled to Germany, where he was arrested and extradited, and the State introduced testimony as to the details of

defendant's escape. We find no error in the admission of this testimony since it is well settled that evidence of flight is competent evidence which may be considered by a jury with all other facts and circumstances tending to prove guilt. See *People v. Pierce* (1975), 26 Ill. App. 3d 550, 325 N.E.2d 758.

Defendant next contends that he was prejudiced by the introduction of evidence that he refused to sign a medical consent form allowing a technician to draw a sample of his blood. At trial, a forensic scientist testified that semen was recovered from the rape victim. He stated that it would be possible to match the blood type of a suspected rapist based upon testing of the semen. He told the jury that to accomplish this would require a sample of the defendant's blood and saliva. The jury was advised that the trial court entered an order requiring defendant to submit to a blood test. However, when defendant was taken to the hospital, he refused to sign the required consent forms for the test and requested the presence of his attorney. The defendant argues in this court that this testimony was irrelevant and suggested to the jury that the defendant exercised his constitutional rights to prevent the State from gathering evidence and served no purpose other than to prejudice the jury's deliberations.

The United States Supreme Court has held that the taking of blood does not trigger the fifth amendment privilege against self-incrimination since this is not testimonial evidence. (*Schmerber v. California* (1966), 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826.) We, therefore, find no constitutional right at issue here. We further note that defense counsel's objection to admission of this testimony was sustained. While we agree that admission of the testimony was improper, in light of the compelling evidence presented in this case, we do not feel it sufficiently prejudiced defendant as to require reversal.

Defendant's next contention is that the trial judge abused his discretion by restricting the cross-examination of the accomplice witness, Michael Hollander, regarding his juvenile record. At trial, defense counsel asked Hollander if he had been arrested for any crime before. Hollander responded "not as an adult." Counsel then asked Hollander whether he had been in criminal court. The State's objection to this question was sustained. Defendant contends that he should have been allowed to inquire into Hollander's juvenile record.

Juvenile adjudications are generally not admissible, but this determination is within the discretion of the trial court, and prior juvenile convictions may be admitted to attack credibility if this evidence is necessary for a fair determination of guilt or innocence. (*People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695.) Juvenile adjudi-

cations are admissible to show bias of the witness where they are relevant to defendant's claim that the witness' testimony was attributable to a promise of leniency. *People v. Norwood* (1973), 54 Ill. 2d 253, 296 N.E.2d 852.

■ In the case at bar, we do not find an abuse of discretion by the trial court in limiting the cross-examination of Hollander regarding his juvenile record. There was no showing by defendant that he expected leniency for his prior juvenile adjudications and the jury heard testimony that Hollander had entered into a plea agreement with the State where, in exchange for his testimony, he would receive a six-year prison term for the charges against him as the adult codefendant in this case. The promise of leniency was not relevant to Hollander's juvenile record. Although the better practice would have been to allow impeachment by Hollander's prior juvenile adjudications to allow the jury to decide if his testimony was worthy of belief, we cannot say the trial court abused its discretion in restricting the cross-examination of Hollander by defense counsel as to his prior juvenile record. See *People v. Harrell* (1983), 112 Ill. App. 3d 241, 445 N.E.2d 496.

■ Defendant next contends he was prejudiced by certain testimony of Michael Hollander. Specifically, during cross-examination, when asked whether he had given a statement to the State's Attorney's office, Hollander responded that he had and "so did Willie," referring to defendant. Defendant contends that Hollander's response indicated that defendant had confessed and deprived him of a fair trial. Our review of the record reveals that the trial court offered to strike the volunteered remarks and defense counsel refused, demanding a mistrial. Hollander did not refer to the statement as a confession and there was no testimony as to the content of the defendant's statement or what the statement concerned. No further reference was made to the statement during the remainder of the trial. Under these circumstances, and in light of the fact there was nothing to suggest any intentional misstatement, we find that the cited testimony was not sufficiently prejudicial to defendant as to require reversal. See *People v. Dukett* (1974), 56 Ill. 2d 432, 308 N.E.2d 590.

■■ Defendant's final argument is that he was not proven guilty beyond a reasonable doubt. Defendant contends that the testimony of the State's witnesses failed to provide the jury with sufficient proof of identification to support the conviction. The law is well settled that a reviewing court will not set aside a conviction unless the evidence is so unsatisfactory that it creates a reasonable doubt of guilt. (*People v. Adams* (1985), 109 Ill. 2d 102, 485 N.E.2d 339.) The suffi-

ciency of identification is a matter of determination by the trier of fact and reversal of a conviction is not warranted unless the testimony is so unsatisfactory as to leave a reasonable doubt as to the guilt of the accused. (*People v. Daniels* (1978), 67 Ill. App. 3d 663, 384 N.E.2d 932.) Further, the question of guilt of an accused is for the trier of fact and guilt may be shown by circumstantial evidence. *People v. Adams* (1985), 109 Ill. 2d 102, 485 N.E.2d 339.

██ In this case, although the victim could not identify defendant in a lineup by his physical characteristics, she did make an identification of his voice. Further, the victim's son identified a photograph of defendant as the man who stayed in the room with his mother and a photograph of Michael Hollander as the man who remained with him. Michael Hollander's testimony clearly identified defendant as the man who robbed and raped the victim. Hollander was familiar with the facts of this crime and placed the defendant at the scene of the crime. Hollander's credibility was for the trier of fact to decide. From our review of the record, it is our opinion that the jury was presented with sufficient identification evidence to prove the defendant guilty beyond a reasonable doubt.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

QUINLAN, P.J., and O'CONNOR, J., concur.