UNITED STATES of America,
Plaintiff,

v.

Kozo WADA, Defendant.

No. CR 03–96–BR.

United States District Court,
D. Oregon.

June 29, 2004.

Karin J. Immergut, United States Attorney, Fredric N. Weinhouse, Assistant United States Attorney, Portland, OR, for Plaintiff.

Steven T. Wax, Federal Public Defender, Christopher J. Schatz, Assistant Federal Public Defender, Portland, OR, for Defendant.

## AMENDED OPINION AND ORDER

BROWN, District Judge.

In an Indictment dated February 25, 2003, the Grand Jury charged Defendant Kozo Wada with eleven felony counts of various firearms offenses and two counts seeking forfeiture of firearms, ammunition, and other property seized in the course of this investigation.

On December 12, 2003, Wada tendered, and the Court accepted, *Alford*[1] pleas to Counts One and Five of the Indictment, as amended, pursuant to the terms of a Settlement Agreement between the parties. The Court then found Wada guilty of Count One (Dealing in Firearms without a Federal Firearms License in violation of 18 U.S.C. § 922(a)(1)(A)) and Count Five (Exporting a "Defense Article" [a firearm] from the United States to Japan Without a Department of State License in violation of 22 U.S.C. §§ 2778(b)(2) and 2778(c) and certain Title 22 federal regulations).

The parties' Settlement Agreement provides the Court is to determine whether United States Sentencing Guideline (USSG) § 2K2.1(b)(1)(D) should be applied, which would increase by eight levels the base offense level for Count One. This enhancement applies if "the offense involved ... 100–199 ..." firearms. *Id.* The parties disputed the facts pertinent to this specific offense characteristic. The Court, therefore, conducted an evidentiary hearing on March 10, 2004; heard oral argument on April 16, 2004; and thereafter considered the parties' written submissions.[2]

---

1. *North Carolina v. Alford,* 400 U.S. 25, 37, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

2. After the evidentiary hearing, the Supreme Court issued an opinion in *Blakely v. Washington* in which the Court held "every defen-

For the reasons that follow, the Court concludes the government has not established by clear and convincing evidence that the items it seeks to count as "firearms" pursuant to USSG § 2K2.1(b)(1)(D) were, in fact, "firearms" as defined by the pertinent statute at the time Wada sold and shipped them to his customers in Japan. Instead the Court agrees with Wada, who characterized these items as "dewatted firearm-ornaments." The Court, therefore, finds USSG § 2K2.1(b)(1)(D) does not apply to enhance the base offense level for Count One because the "dewatted firearm-ornaments" that Wada sold as part of his business do not count as firearms under USSG § 2K2.1(b)(1)(D).[3]

### THE LAW

#### 1. Statutes

18 U.S.C. § 922(a)(1) provides:

It shall be unlawful for any person except a ... licensed dealer, to engage in the business of ... dealing in firearms, ....

18 U.S.C. § 921(a)(11)(A) provides:

The term "dealer" means any person engaged in the business of selling firearms at wholesale or retail ....

18 U.S.C. § 921(a)(21)(C) provides:

The term "engaged in the business" means ... as applied to a dealer in firearms ... a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms, ....

18 U.S.C. § 921(a)(3) provides:

The term "firearm" means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.

#### 2. Burden of Proof

Because the addition of eight levels to the base offense level for Count One would more than double the potential sentencing range for that Count, the parties agreed the Court must base its factual findings on a standard of clear and convincing evidence. *See United States v. Valensia,* 222 F.3d 1173, 1179 (9th Cir.2000). The parties' agreement, however, was reached before the Supreme Court decided *Blakely.*

### FINDINGS OF FACT

The parties made certain factual stipulations during the proceedings on April 16, 2004, and, accordingly, the Court accepts such facts as true for purposes of this analysis. In addition, the Court has weighed and evaluated all of the evidence presented in connection with this sentencing issue. Based on the parties' stipula-

---

dant has the *right* to insist that the prosecutor prove to a jury [beyond a reasonable doubt] all facts legally essential to the punishment." —— U.S. ——, ——, 124 S.Ct. 2531, 159 L.Ed.2d 403, 2004 WL 1402697, at *9 (2004)(emphasis in original). In light of this holding, Wada has the right to have a jury determine the number of firearms involved in Count One. Nonetheless, the Court issues this Opinion and Order in light of the fact that the Court finds in favor of Defendant on this issue, which was raised and argued before *Blakely* and which, therefore, does not require a different procedure under the circumstances of this case.

3. The Court will resolve at Wada's sentencing hearing all of the other sentencing issues raised in Wada's memoranda, including the appropriate base offense level and Wada's arguments in support of his various requests for a downward departure.

tions and the Court's assessment of the record, the Court finds the following facts by clear and convincing evidence:

1. Wada, a Japanese citizen, was engaged in business in Oregon under the name of "U S Mart Co." Beginning in the year 2000, Wada became interested in selling military accessories and other merchandise to buyers in Japan. After he contacted police authorities in Osaka, Wada understood Japanese law would permit him to sell "dewatted firearm-ornaments" to such buyers; that is, "firearms" that he modified to render them inoperable before he shipped them to Japan.

2. In the course of his business, Wada purchased more than 100 firearms in Oregon; paid a federally licensed gunsmith, Roger Loock, to modify them to render them inoperable; and then sold and shipped the firearms as modified to purchasers in Japan.

3. The methods Wada used to modify these firearms changed their fundamental character and rendered them inoperable as functioning firearms. The Court adopts as part of its findings all of the evidence Wada offered concerning the several methods he used for this purpose and his evidence showing the extreme difficulty and unlikelihood that, once modified, any such former "firearm" could readily be restored to functional use.

4. The following are examples of Wada's modifications of the firearms: Wada had Roger Loock modify a firearm by cutting the frame of the firearm vertically or by removing and deactivating the slide rail from the top of a semi-automatic handgun as described in Exhibit A to Wada's Evidentiary Hearing and Sentencing Memorandum. In addition, Wada used several methods to modify the barrels of semi-automatic handguns, which included cutting a slot out of the barrel and welding a metal rod to the barrel or drilling a hole on one side of the barrel and inserting a hardened metal pin into the barrel and through a steel rod.

5. After a "firearm" was "deactivated" by one of Wada's methods, it would take a great deal of time, expertise, equipment, and materials to attempt to reactivate the item so that it could "expel a projectile by the action of an explosive." As a result of Wada's modification methods, each "firearm" (a) no longer was "designed to ... expel a projectile by the action of an explosive," (b) could not "readily be converted" to do so, and (c) was no longer "the frame or receiver" of a weapon that was "designed to or ... [could] readily be converted to expel a projectile by the action of an explosive." The Court, therefore, finds unconvincing the government's evidence that such modified firearms could "readily" be returned to functional use.

### DISCUSSION

According to the government, USSG § 2K2.1(b)(1)(D) applies to Count One because the "dewatted firearm-ornaments" that Wada sold fit the definition of "firearm" under federal law when he sold them, and, therefore, they should be counted for purposes of this specific offense characteristic.

Applying the definition of "firearm" in 18 U.S.C. § 921(a)(3) to the items Wada sold in the course of his business, the government asserts it need only prove by clear and convincing evidence any of the following to justify the application of USSG § 2K2.1(b)(1)(D) to Count One: (1) each item to be counted "was" designed to expel a projectile by an action of an explosive, or (2) each item "will" expel a projectile by the action of an explosive, or (3) each item "was" the frame or receiver of any such weapon. The Court, however, disagrees with the government's statutory interpretation and construction.

With respect to the government's first asserted option, the Court notes 18 U.S.C. § 921(a)(3)(A) is not written in the past tense and, in particular, does not speak in terms of whether an item "was" designed to expel a projectile. The statute explicitly applies to any weapon that "will," "is designed to," or "may readily be converted to" expel a projectile. These words— "will," "is designed to," and "may readily be converted to"—must be given their ordinary meaning. *See Bailey v. United States,* 516 U.S. 137, 144-45, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995) (citations omitted). Under any ordinary interpretation, "will" does not mean "was," "is designed to" does not mean "was designed to," and "may readily be converted to" does not mean "was converted to." Thus, the Court rejects the government's argument that USSG § 2K2.1(b)(1)(D) applies to Count One on the ground that each of the modified "firearms" originally was designed to expel a projectile by the action of an explosive.

With respect to the government's second asserted option, the Court concludes the government has not proved by clear and convincing evidence that each item, as modified, "will" expel a projectile by the action of an explosive. Although there is some evidence that it is not impossible for a person to modify such a "firearm" to restore its capacity to fire a projectile if he invested significant time and effort and acquired all of the parts and equipment necessary to do so, that evidence is not sufficient to prove the item "will" expel a projectile or could "readily be converted" to do so. Indeed, the whole point of Wada's extensive modification efforts was to render each "ornament" inoperable as a "firearm," and Wada's evidence proves he effectively did so.

Finally, the government's third asserted option also is not supported by the ordinary meaning of the words in the statute. Although 18 U.S.C. § 921(a)(3)(B) defines as a firearm "the frame or receiver of any such weapon," and each of the items as modified by Wada includes a "frame" or a "receiver," the government's argument fails because only the frame or receiver of "any such weapon" qualifies. For the reasons already stated, these items as modified are not included in the definition of "any such weapon."

In summary, the Court agrees with Wada and finds the changes Wada made to each modified firearm fundamentally altered its characteristics to such a degree that it no longer was a "firearm" as defined under federal law by the time it was sold and shipped to Wada's customers in Japan. Thus, the Court finds these "dewatted firearm ornaments" do not qualify for purposes of the specific offense characteristic set forth in USSG § 2K2.1(b)(1)(D).[4]

IT IS SO ORDERED.

---

**4.** Because the Court adopts Wada's primary analysis opposing application of USSG § 2K2.1(b)(1)(D), the Court need not address Wada's alternative arguments.