THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROSS WILLIAMS, Defendant-Appellant.

First District (2nd Division)  No. 1—08—0487

Opinion filed September 15, 2009.—Rehearing denied October 16, 2009.

---

Michael J. Pelletier, Patricia Unsinn, and Lindsey J. Anderson, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita Alvarez, State's Attorney, of Chicago (James E. Fitzgerald, Samuel Shim, and Tja A. Chiapelli, Assistant State's Attorneys, of counsel), for the People.

JUSTICE THEIS delivered the opinion of the court:

Following a bench trial, defendant Ross Williams was convicted of unlawful use of a weapon (UUW) for possession of a sawed-off shotgun (720 ILCS 5/24—1(a)(7)(ii) (West 2006)) and was sentenced to 12 months' probation. On appeal, defendant contends that: (1) the State failed to prove him guilty of the offense beyond a reasonable doubt because the item recovered was in such disrepair that it could no longer be considered a deadly weapon; and (2) the statute is unconstitutional as applied to him because it punishes his innocent conduct. For the following reasons, we affirm the judgment of the circuit court.

## BACKGROUND

The following facts were adduced at defendant's trial. Officer Robert Spiegel testified that on August 6, 2007, he responded to a call

regarding a person with a gun at 12520 South Yale Avenue in Chicago. He was told by defendant's brother, Jeffrey Williams, that he and defendant had an argument, that defendant produced a revolver and tried to kill him, and that the weapon was in the garage. After investigating, Officer Spiegel and his partners recovered three shotguns and a handgun from the garage. It was stipulated that Officer Pierce would testify that he recovered a 12-gauge shotgun with a sawed-off barrel and subsequently turned the weapon over to Officer Spiegel. People's exhibit No. 1 was identified as the shotgun recovered by Officer Pierce and as the weapon which ultimately formed the basis for the charge. The barrel length of the shotgun measured 12 inches. When the officers questioned defendant about the shotgun, he told them that he retrieved it from someone who had dropped it in the alley.

On cross-examination, Officer Spiegel agreed that exhibit No. 1 appeared to be a rusted shotgun in very poor condition. He acknowledged that when the trigger was pulled, the barrel came off the rest of the weapon, but when asked if that was normal, he stated that "with this type of shotgun, it appears to be, with the way it connects." He agreed that when the trigger was pulled, the hammer did not strike the firing pin because there was a gap between them. The shotgun was in substantially the same condition as it was when it was recovered from the garage. Officer Speigel never test-fired the weapon.

Defendant testified that he was living in the garage of his mother's house at the time of his arrest. He denied that the shotgun was his, but indicated that he had seen some kids playing with it in the alley and he picked it up. He thought about taking it to the police station for $75, but apparently he was told by his brother that he would be laughed at if he "brought that junk in" so he just "held on to it for junk." Neither the State nor defendant sought to admit the gun into evidence at trial. The trial court subsequently found defendant guilty of possession of a shotgun with a barrel length of less than 18 inches and sentenced him to 12 months' probation.

ANALYSIS

Defendant contends that the State failed to prove him guilty of the offense beyond a reasonable doubt because the item recovered is merely "a piece of irreparable junk" and does not qualify as a prohibited weapon under the statute.

In analyzing this issue, we are asked to engage in statutory construction, to which we apply a *de novo* standard (*People v. Perry*, 224 Ill. 2d 312, 324 (2007)), and to consider the sufficiency of the evidence. When reviewing the sufficiency of the evidence, we must

determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979). We will not retry the defendant or substitute our judgment for that of the trial court. *People v. Jackson*, 232 Ill. 2d 246, 280 (2009). It is the trier of fact's duty to assess the credibility of the witnesses, determine the appropriate weight of the testimony, and resolve conflicts or inconsistencies in the evidence. *Jackson*, 209 Ill. 2d at 280. We will not reverse a criminal conviction unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt as to the defendant's guilt. *People v. Ross*, 229 Ill. 2d 255, 272 (2008).

Here, defendant was charged with unlawful use of a weapon under section 24—1(a)(7)(ii) of the Criminal Code of 1961 (the Code), which makes it unlawful to possess a shotgun having one or more barrels less than 18 inches in length. 720 ILCS 5/24—1(a)(7)(ii) (West 2006). A shotgun is a type of firearm, which is "any device by whatever name known, which is designed to expel a projectile or projectiles by the action of an explosion, expansion of gas or escape of gas."[1] 430 ILCS 65/ 1.1 (West 2006); 720 ILCS 5/2—7.5 (West 2006); *People v. Ems*, 81 Ill. App. 3d 574, 579 (1980).

Where the language of the statute is clear and unambiguous, we must apply it as written, without resort to extrinsic aids. *Perry*, 224 Ill. 2d at 323. There is nothing in the plain language of either statute that requires the firearm to be currently operational or functional to serve as the basis for a conviction under section 24—1(a)(7)(ii) of the Code. Unlike other sections of article 24 which expressly provide an exception for certain weapons that are broken down in a nonfunctioning state (720 ILCS 5/24—1(a)(4)(i) (West 2006)), section 24— 1(a)(7)(ii) does not fall within the purview of that exception.

Illinois courts have followed this statutory construction in articulating the State's burden of proof on this issue, finding in similar circumstances that it is sufficient for the State to show "that the weapon possessed the outward appearance and characteristics of such *** [a] firearm; it is immaterial that such weapon is not loaded, has no firing pin or open barrel, or is otherwise inoperable." *People v. Halley*, 131 Ill. App. 2d 1070, 1073 (1971); *People v. Theobald*, 43 Ill. App.

---

[1]We note that the statutory definition provides a specific exception for an antique firearm which the Department of State Police finds by reason of certain characteristics is a collector's item and not likely to be used as a weapon. 430 ILCS 65/1.1 (West 2006).

3d 897, 900 (1976) (a sawed-off shotgun does not cease to be designed as such by "becoming temporarily dismembered if the parts are laying side by side and may be easily reassembled"). Federal courts addressing similar "design" language have followed this construction as well. See, *e.g.*, *United States v. Yannott*, 42 F.3d 999, 1006 (6th Cir. 1994) ("[T]he broken firing pin merely temporarily altered the weapon's capability and did not so alter the weapon's design that it no longer served the purpose for which it was originally designed"); *United States v. York*, 830 F.2d 885, 891 (8th Cir. 1987) (rejecting an argument that a gun was not a firearm designed to fire a projectile where the cylinder did not line up properly with the gun barrel). Thus, the State need not prove that a sawed-off shotgun is operable before the trier of fact can conclude it is such a firearm.

The rationale for this construction has been articulated as follows:

" 'A deadly weapon does not cease to be such by becoming temporarily inefficient, nor is its essential character changed by dismemberment if the parts, with reasonable preparation, may be easily assembled so as to be effective.' " *People v. Hill*, 433 Mich. 464, 473, 446 N.W.2d 140, 144 (1989), quoting 94 C.J.S. *Weapons* §§2, 6, at 479-80, 489.

We find two cases related to this issue to be instructive in our analysis. In *People v. Martinez*, 285 Ill. App. 3d 881 (1996), the defendant made the argument that a stun gun that was broken and could not emit an electric current no longer met the definition of a stun gun, which is defined in part as a device that " 'can send out a current.' " *Martinez*, 285 Ill. App. 3d at 883, quoting 720 ILCS 5/24—1(a)(10) (West 1992). The court rejected this argument, finding that the "can send" language was descriptive of the device's design and intended function rather than its present ability to operate. The court held that a stun gun, "like any other tool or device, is not changed in character merely because of its present inability to perform." *Martinez*, 285 Ill. App. 3d at 884.

Subsequently, in *People v. Velez*, 336 Ill. App. 3d 261 (2003), the defendant attempted to argue that he could not be convicted of possessing a switchblade knife where the blade did not open when the button was pressed where the statute defined a switchblade knife as " 'a blade that opens automatically by hand pressure applied to a button, spring, or other device in the handle of the knife.' " (Emphasis omitted.) *Velez*, 336 Ill. App. 3d at 265, quoting 720 ILCS 5/24—1(a)(1) (West 2000). The court, relying on *Martinez*, rejected this argument, finding that where the knife was designed and intended to operate as a switchblade knife, a defendant may be found guilty of UUW even if the knife is malfunctioning or inoperable. *Velez*, 336 Ill. App. 3d at

266. Based upon the statutory construction, we find the reasoning in these cases equally applicable to the present case.

Defendant attempts to avoid the issue of operability and function on appeal by arguing instead that a shotgun in an irreparable condition can no longer be said to be "designed" as a shotgun because it no longer has the essential characteristics of a shotgun and cannot likely be used as a weapon. Defendant cites *People v. Worlds*, 80 Ill. App. 3d 628, 632 (1980), where the court, without analysis, held that a rusted gun without a handle could not be classified as a gun, and *People v. Coburn*, 25 Ill. App. 3d 542, 545 (1975), where the court held that without a barrel, the mere stock of a gun lacked the essential characteristics of a shotgun.

Determining when something no longer has the characteristics of its original design is somewhat of a heap paradox, a paradox that arises when one considers a heap of sand from which grains are individually removed. Is it still a heap when one grain is removed? If not, when did it change from a heap to a non-heap? Nonetheless, we agree that a device could indeed be in such a state of disrepair or its design so completely altered that it no longer could be said to be "designed" for that purpose and, therefore, no longer a threat to public health, safety, and decency. See *Velez*, 336 Ill. App. 3d at 266 (acknowledging that "a device may be in such a decrepit state that it ceases to qualify as a switchblade knife"). For example, there would be a legitimate factual dispute if evidence was presented to support a finding that a firearm was not reasonably repairable or if evidence was presented that a firearm was filled with concrete and was used as a theater prop or an ornament. See, *e.g.*, *United States v. Wada*, 323 F. Supp. 2d 1079 (D. Or. 2004) ("dewatted firearm ornaments" were so altered in character as to no longer be classified as firearms).

■ Thus, defendant's theory regarding the condition of the item was a question for the trier of fact to assess. The evidence presented was that the item appeared to be a 12-gauge shotgun with a 12-inch barrel, albeit currently inoperable and rusted. However, there was no evidence presented from which the trier of fact could determine that its design was in fact altered or that it was so totally inoperable that it could not have been reasonably repaired or was permanently harmless. Accordingly, the trier of fact could have found that the State met its burden to establish the necessary elements of the offense. We will not substitute our judgment for that of the trier of fact, especially here where we have had no opportunity to view the item. *Jackson*, 232 Ill. 2d at 280.

■ We next address defendant's contention that section 24—1(a)(7)(ii) is unconstitutional as applied to him because it punishes his

innocent conduct as a "Good Samaritan" in violation of due process. We begin our analysis with the presumption that the statute is constitutional. *People v. Jones*, 223 Ill. 2d 569, 595 (2006). A party challenging the constitutionality of a statute has the burden of clearly establishing its invalidity. *Jones*, 223 Ill. 2d at 596. The legislature, pursuant to its police power, has wide latitude in determining what the public interest and welfare require and to determine the measures needed to secure such interest, but this discretion is limited by the constitutional guarantee that a person may not be deprived of liberty without due process of law. *In re K.C.*, 186 Ill. 2d 542, 550 (1999).

When legislation does not affect a fundamental constitutional right, the court applies the rational-basis test to determine the legislation's constitutionality. *People v. Wright*, 194 Ill. 2d 1, 24 (2000). A statute attacked on due-process grounds will be upheld so long as it (1) bears a reasonable relationship to the public interest sought to be protected and (2) the means employed are a reasonable method of achieving the desired objective. *People v. Carpenter*, 228 Ill. 2d 250, 267-68 (2008). When applying the rational-basis test, the court is highly deferential to the findings of the legislature. *People v. Johnson*, 225 Ill. 2d 573, 585 (2007).

Unlike other statutes, section 24—1(a)(7)(ii) is focused on the danger of a particular type of weapon regardless of the individual's criminal objective. 720 ILCS 5/24—1(a)(7)(ii) (West 2006). The legislature has determined that certain categories of firearms including sawed-off shotguns are so inherently dangerous to human life that they constitute a sufficient hazard to society to justify their prohibition. See *People v. Williams*, 60 Ill. App. 3d 726, 727 (1978); *People v. Stankovich*, 20 Ill. App. 3d 162 (1974); 720 ILCS Ann. 5/24—1(a)(7)(ii), Committee Comments—1961, at 7 (Smith-Hurd 2003). Sawed-off shotguns are considered to be among the most dangerous and threatening weapons. *People v. Gray*, 212 Ill. App. 3d 613, 617 (1991). Thus, they are deemed to be contraband *per se*, having no legitimate purpose. *People v. Wright*, 140 Ill. App. 3d 576, 582 (1986), citing *People v. Ivy*, 133 Ill. App. 3d 647, 653 (1985).

Defendant argues that the statute as applied to him was not reasonably related to accomplishing its purpose because he was acting as a "Good Samaritan" by acquiring the weapon from the alley, taking it away from the kids, and merely "holding on to it for junk." We have repeatedly considered and rejected similar arguments in the context of the aggravated UUW statute. For example, in *People v. Marin*, 342 Ill. App. 3d 716, 727-28 (2003), the court discussed the "Good Samaritan" hypothetical and held that, even in that scenario, imposing a culpable mental state or criminal intent would defeat the statute's purpose of

protecting the public and law enforcement officers from the danger of weapons in public places.

In reaching its holding, the court distinguished the same cases cited by defendant here, finding that unlike those cases, the underlying activity of possessing an accessible and loaded weapon was itself dangerous and undesirable, regardless of the intent of the bearer since it could endanger public safety. *Marin*, 342 Ill. App. 3d at 724-27. Additionally, the court found that the "Good Samaritan" could have handled the situation in a safer manner. *Marin*, 342 Ill. App. 3d at 729 (he could have asked someone to call police while he made sure the child did not touch the weapon).

Similarly, here, imposing a culpable mental state would defeat the statute's purpose of protecting the public from the inherent dangers of sawed-off shotguns. The danger of this type of weapon is no less apparent whether the weapon is in the hands of a child or in defendant's possession. In either circumstance, the presence of the weapon creates a potential risk of harm to the community. Accordingly, we find that section 24—1(a)(7)(ii), as applied to defendant, is reasonably related to its goal of public safety and does not sweep too broadly.

For all of the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.

CUNNINGHAM, P.J., and HOFFMAN, J., concur.