2024 IL App (1st) 230952-U
No. 1-23-0952

FIRST DIVISION
December 16, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 22MC1193153 |
| | ) | |
| EDUARDO PARAMO, | ) | |
| | ) | The Honorable |
| Defendant-Appellant. | ) | Robert D. Kuzas, |
| | ) | Judge Presiding. |

JUSTICE PUCINSKI delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held:* (1) Defendant failed to establish by a preponderance of the evidence that subsection 2(d) of the FOID Act exempted him. (2) The State proved beyond a reasonable doubt that defendant unlawfully possessed a firearm without a FOID card. (3) The FOID Act is constitutional under the Second Amendment.

¶ 2    Defendant Eduardo Paramo appeals his conviction and sentence for unlawful possession of a firearm without a valid Firearm Owner's Identification ("FOID") card. 430 ILCS 65/2(a)(1) (West 2022). He argues the State failed to prove him guilty beyond a reasonable doubt because (1) he was exempt from the Firearm Owner's Identification Card Act ("FOID Act") (430 ILCS

65/0.01 *et seq.* (West 2022)), (2) the firearm recovered was not a "firearm," and (3) he did not knowingly possess a "firearm." He also argues that the FOID Act is unconstitutional pursuant to the Second Amendment (U.S. Const., amend. II). We affirm.

¶ 3                                    BACKGROUND

¶ 4        The State charged defendant with one count of unlawful possession of a firearm without a valid FOID card. 430 ILCS 65/2(a)(1) (West 2022). The misdemeanor complaint alleged that defendant knowingly possessed an Intratec Scorpion 22LR ("TEC-22") without having in his possession a valid FOID card. Defendant waived his right to a jury trial and proceeded to a bench trial.

¶ 5        At the bench trial, Chicago Police Officer Oomens testified that around midnight on July 17, 2022, he and his partner were responding to an unrelated call. As they approached a stop light, a group of men fled from a nearby gas station. One man ran towards their vehicle and stated, "he has a gun." The man pointed towards a white Dodge Neon. The Dodge Neon pulled out of the gas station, and the officers followed it. The officers ran the Dodge Neon's Illinois license plate, which they learned was expired and registered to defendant. Oomens initiated a traffic stop.

¶ 6        Defendant started to exit the vehicle. Oomens told defendant to remain in the vehicle, and defendant complied. Oomens approached from the passenger side of the vehicle. Oomens asked defendant whether he had anything in the vehicle. Defendant replied yes and retrieved a firearm from the passenger side floorboard. Oomens recovered the firearm and rendered it safe. His partner secured defendant in handcuffs. Oomens searched the vehicle but did not recover anything else. Oomens testified that the firearm recovered was an "[Intratec] .22 Scorpion." The firearm was unloaded and nonfunctional. Oomens clarified that the bolt carrier group was

removed from the firearm. The lack of a bolt carrier group prevented the firearm from firing. Oomens recalled defendant referring to the firearm as a ".22."

¶ 7        The State asked the circuit court to enter People's Exhibit 1 into evidence. The circuit court admitted People's Exhibit 1 into evidence. The State published People's Exhibit 1. People's Exhibit 1 contains footage from Oomen's body camera. People's Exhibit 1 depicts Oomen and his partner initiate a traffic stop on a white Dodge Neon with Illinois plate number CU56617. Oomen yells at defendant to stay in the car. Defendant responds, "they were harassing me and my girlfriend, man." Oomen walks up to the front passenger side door and asks, "you got anything in the car." Defendant's car is messy. Defendant responds, "yeah I got this officer; look it don't work." Defendant retrieves something from the front passenger side of his vehicle. Oomen tells defendant, "stop touching it," and tells him to get out of the car. Oomen retrieves a firearm and its magazine as defendant exits the car. As Oomen walks defendant to the police vehicle, defendant informs Oomen that "it don't even got a spring in it." Oomen places defendant in the back of the police vehicle.

¶ 8        Oomen retrieves the firearm and asks defendant "what is this a .22?" Defendant responds, "no it's a Glock, sir." Oomen asks, "it's a what?" Defendant responds "oh yeah, yeah, it's a .22 caliber, it don't even got a spring on it, you know?"

¶ 9        Oomen asks defendant if he has an Illinois identification card or a United States identification card with him. Defendant responds "that's the only I.D. I got." He elaborates that he does not have a United States identification card but once had one because of the DREAM Act. Oomen then asks defendant whether he possesses an Illinois FOID card or concealed carry license. Defendant responds that he does not have either. Oomen informs defendant that he is currently unlawfully possessing a firearm. Defendant responds "alright, I understand." Oomens

informs other officers that defendant "does not have any Illinois or US documents. All he has is a Mexico ID."

¶ 10    On cross-examination, Oomens testified that he did not find the spring for the firearm inside defendant's vehicle. Oomen did not test the firearm to make sure that it worked.

¶ 11    The circuit court ruled:

> "I have had an opportunity to hear the evidence in this matter, weigh the credibility of the witnesses, apply the appropriate statutory law and presumptions, and after hearing the evidence, I find specifically that this is a firearm, that it was designed to expel projectile by gas or explosion, that I saw on the tape the firearm itself. Whether it is functioning or not functioning, it still meets the definition of a firearm.
>     There will be a finding of guilty. Are you ready for sentencing."

The circuit court sentenced defendant to one day's supervision, terminated satisfactorily.

¶ 12    Defendant appealed.

¶ 13                                    ANALYSIS

¶ 14                              FOID Act Exemption

¶ 15    Defendant argues that his conviction must be reversed because he is exempt from the FOID Act, and the State failed to negate the exception beyond a reasonable doubt. The State responds that it proved beyond a reasonable doubt that defendant possessed a firearm without a FOID card. The question raised on appeal is whether to sustain a conviction of unlawful possession of a firearm without a valid Illinois FOID card, the State needed to prove beyond a reasonable doubt that section 2(d) of the FOID Act did not apply. Since our analysis begins with a question of statutory interpretation, our review is *de novo*. *People v. Tolbert*, 2016 IL 117846, ¶ 12.

¶ 16    "In construing a statute, our primary objective is to ascertain and give effect to the legislature's intent." *Corbett v. County of Lake*, 2017 IL 121536, ¶ 30. "The most reliable

indicator of legislative intent is the language of the statute, given its plain and ordinary meaning." *People v. Gutman*, 2011 IL 110338, ¶ 12. The general principles governing our interpretation of section 2(d) of the FOID Act are well settled. Our supreme court stated in *People v. Close*, 238 Ill. 2d 497 (2010):

> " '[I]t is the rule in this State that where an act is made criminal, with exceptions embraced in the enacting clause creating the offense, so as to be descriptive of it, the People must allege and prove that the defendant is not within the exceptions so as to show that the precise crime has been committed. In other words, where the exception is descriptive of the offense it must be negatived in order to charge the defendant with the offense. On the other hand, if the exception, instead of being a part of the description of the offense, merely withdraws certain acts or certain persons from the operation of the statute it need not be negatived, and its position in the act, whether in the same section or another part of the act, is of no consequence. [Citations.] Exceptions are generally mere matters of defense. [Citations.]' " *Close*, 238 Ill. 2d at 508 (quoting *People ex rel. Courtney v. Prystalski*, 358 Ill. 198, 203-04 (1934)).

"[I]n determining whether an exception to a criminal statute is an element to be proved by the State, we do not look solely at where the exception is positioned in the statute." *Tolbert*, 2016 IL 117846, ¶ 15. "Instead, we must determine more generally whether the legislature intended the exception to be 'descriptive' of the offense, or whether the legislature intended only to withdraw, or exempt, certain acts or persons form the operation of the statute." *Id*. (quoting *Close*, 238 Ill. 2d at 508).

¶ 17　　　　Section 2(a)(1) of the FOID Act states: "[n]o person may acquire or possess any firearm, stun gun, or taser within this State without having in his or her possession a Firearm Owner's Identification Card previously issued in his or her name by the Illinois State Police under the provisions of this Act." 430 ILCS 65/2(a)(1) (West 2022). Section 2(d) of the FOID Act states:

> "[a]ny person who becomes a resident of this State, who is not otherwise prohibited from obtaining, possessing, or using a firearm or firearm ammunition, shall not be required to have a Firearm Owner's Identification Card to possess firearms or firearms ammunition until 60 calendar days after

he or she obtains an Illinois driver's license or Illinois Identification Card." *Id*. § 2(d).

¶ 18    Section 2 begins with subsections 2(a)(1) and 2(a)(2) which describe the offense of unlawful possession of a firearm, or firearm ammunition without possession of a FOID card. 430 ILCS 65/2(a)(1), (a)(2) (West 2022). Section 2 of the FOID Act then delineates into the exceptions. *Id*. §§ 2(b)(1)-(15), (c), (c-5), (d). The legislature clearly intended for these subsections to be exceptions based on the plain language found in each which exempt certain persons from the FOID card requirement. Subsection (d) does nothing to describe the offense of unlawful possession of a firearm without a FOID card. Instead, it simply withdraws new Illinois residents from the operation of the statute until 60 days after they either obtain an Illinois driver's license, or an Illinois identification card. See *id*. § 2(d) (a new Illinois resident "shall not be required" to possess a FOID card until 60 calendar days after he obtains an Illinois driver's license or identification card).

¶ 19    The State was not required to prove beyond a reasonable doubt the subsection 2(d) exception. See *People v. Fields*, 2014 IL App (1st) 130209, ¶¶ 31-45. Instead, it was defendant's burden to raise and prove the exemption by a preponderance of the evidence. *Tolbert*, 2016 IL 117846, ¶¶ 1, 17; *Fields*, 2014 IL App (1st) 130209, ¶¶ 31-45; *People v. Williams*, 28 Ill. App. 3d 67, 70 (4th Dist. 1975).

¶ 20    Furthermore, defendant's interpretation of section 2 of the FOID Act is absurd. "We view the statute as a whole, construing words and phrases in light of other relevant statutory provisions and not in isolation. Each word, clause, and sentence of a statute must be given a reasonable meaning, if possible, and should not be rendered superfluous." *Gutman*, 2011 IL 110338, ¶ 12.  "A reviewing court may also consider the underlying purpose of the statute's enactment, the evils sought to be remedied, and the consequences of construing the statute in one

manner versus another." *People v. Garcia*, 241 Ill. 2d 416, 421 (2011). While ambiguous criminal statues will generally be construed in favor of the defendant, the rule of lenity is subordinate to our obligation to determine legislative intent, and the rule of lenity will not defeat legislative intent. *Gutman*, 2011 IL 110338, ¶ 12. The court presumes that the legislature did not intend to create absurd results. *Id*.

¶ 21    Defendant claims that he is exempt under subsection 2(d) because he never obtained an Illinois driver's license or identification card, thus the 60 day timeline never started. In essence, defendant argues that an individual who becomes a new Illinois resident never has to comply with the FOID Act if they decide never to obtain a driver's license or identification card. In construing the statute as a whole, this is clearly not what the legislature intended. Subsection 2(a)(1) of the FOID Act explicitly states, "*no person may acquire or possess any firearm \*\*\** within this State *without* having in his or her possession a Firearm Owner's Identification Card previously issued in his or her name\*\*\*." [Emphasis added.] 430 ILCS 65/2(a)(1) (West 2022). Defendant's interpretation of subsection 2(d) of the FOID Act would allow new residents to decide whether to comply with the FOID Act. The language found in subsections 2(a)(1) and 2(a)(2) is clearly not discretionary.

¶ 22    As we stated above, the legislature clearly intended for subsection 2(d) of the FOID Act to serve as a grace period for new residents. The reference to obtaining an Illinois driver's license is notable.

> "A nonresident who becomes a resident of this State, may for a period of the first 90 days of residence in Illinois operate any motor vehicle which he was qualified or licensed to drive by his home state or country so long as he has in his possession, a valid and current license issued to him by his home state or country. Upon expiration of such 90 day period, such new resident must comply with the provisions of this Act and apply for an Illinois license or permit." 625 ILCS 5/6-102 (West 2022).

Reading subsection 2(d) of the FOID Act in conjunction with section 6-102 of the Illinois Driver Licensing Law, the legislature intended to allow new residents at most a 120 day grace period to comply with the provisions of the FOID Act.

¶ 23    Here, Oomens testified that he learned defendant's Illinois license plate was expired. Accordingly, defendant had been a resident of Illinois for at least a year (see 625 ILCS 5/3-402 (West 2022), see *id*. § 3-414), and defendant was well beyond the grace period provide in subsection 2(d) of the FOID Act. His failure to comply the other laws of this State did not preclude the State from enforcing the FOID Act. Defendant failed to establish by a preponderance of the evidence that the subsection 2(d) exemption applied to him.

¶ 24    If the Illinois legislature did not intend to allow new residents a 120 day grace period to comply with the FOID Act, we recommend that they clarify subsection 2(d).

¶ 25                              Sufficiency of the Evidence

¶ 26    Defendant argues that the State failed to prove beyond a reasonable doubt that the TEC-22 he possessed was a "firearm" as defined by the FOID Act, or that he knew the TEC-22 was a "firearm."

¶ 27                                        *Firearm*

¶ 28    Defendant argues that the TEC-22 was not a firearm since he "redesigned" it to prevent it from expelling a projectile. The State responds that the removal of a single piece from the TEC-22, causing it to be inoperable at the time, does not change the fact that it was a "firearm" as defined by section 1.1 of the FOID Act.

¶ 29    We apply the *de novo* standard to our statutory interpretation of section 1.1 of the FOID Act (*People v. Perry*, 224 Ill. 2d 312, 324 (2007)), and then must consider whether the evidence was sufficient to establish that the TEC-22 was a "firearm" (*People v. Collins*, 106 Ill. 2d 237,

261 (1985)). We find that *People v. Williams*, 394 Ill. App. 3d 286 (1st Dist. 2009) is instructive on this issue.

¶ 30     In *Williams*, the defendant argued that the State failed to prove him guilty beyond a reasonable doubt because the shotgun recovered could no longer be said to be "designed" as a firearm since it no longer had the essential characteristics of a firearm and could not likely be used as a firearm. *Williams*, 394 Ill. App. 3d at 288, 291. The *Williams* court analyzed section 1.1 of the FOID Act which defines a "firearm" as "any device by whatever name known, which is designed to expel a projectile or projectiles by the action of an explosion, expansion of gas or escape of gas." *Id*. at 289 (quoting 430 ILCS 65/1.1 (West 2006)). The *Williams* court determined that the plain language of the statute did not require the firearm to be currently operational or functional. *Williams*, 394 Ill. App. 3d at 289. The *Williams* court noted that other Illinois courts determined "that it is sufficient for the State to show 'that the weapon possessed the outward appearance and characteristics of *** [a] firearm; it is immaterial that such a weapon is not loaded, has no firing pin or open barrel, or is otherwise inoperable.' " *Id*. at 289-90 (quoting *People v. Halley*, 131 Ill. App. 2d 1070, 1073 (5th Dist. 1971)). The *Williams* court reasoned that the State need not prove a firearm is operable before the trier of fact can conclude it is a firearm. *Williams*, 394 Ill. App. 3d at 290. The *Williams* court stated that the rationale for this construction:

> " ' "[a] deadly weapon does not cease to be such by becoming temporarily inefficient, nor is its essential character changed by dismemberment if the parts, with reasonable preparation, may be easily assembled so as to be effective." ' " *Williams*, 394 Ill. App. 3d at 290 (quoting *People v. Hill*, 433 Mich. 464, 473 (1989), quoting 94 C.J.S. *Weapons*, §§ 2, 6 at 479-80, 489).

The *Williams* court concluded that the defendant's theory regarding whether the shotgun recovered could no longer be said to be "designed" as a firearm was a question for the trier of fact to assess. *Williams*, 394 Ill. App. 3d at 291.

¶ 31    When a defendant makes a challenge to the sufficiency of the evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "[I]n weighing evidence, the trier of fact is not required to disregard inferences which flow normally from the evidence before it, nor need it search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *People v. Jackson*, 232 Ill. 2d 246, 281 (2009). "When presented with a challenge to the sufficiency of the evidence, it is not the function of this court to retry the defendant." *Collins*, 106 Ill. 2d at 261. Thus, "the reviewing court must allow all reasonable inferences from the record in favor of the prosecution." *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). "A conviction will be reversed only where the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *People v. Belknap*, 2014 IL 117094, ¶ 67. We apply this standard of review "regardless of whether the evidence is direct or circumstantial." *People v. Norris*, 399 Ill. App. 3d 525, 531 (2010).

¶ 32    Here, Oomens testified the bolt carrier group was removed from the TEC-22, which prevented it from firing. Defendant informed Oomens that the TEC-22 was missing a "spring." The removal of a single part from a firearm would hardly constitute a "redesign." Instead, the TEC-22 was simply inoperable at the time of defendant's arrest. There was no evidence presented from which the tier of fact could determine that the TEC-22's design was altered or

that it was so inoperable that the bolt carrier group could not be replaced or was permanently harmless. Accordingly, after viewing the evidence in the light most favorable to the State, the trier of fact could have found that the State met its burden to establish that the TEC-22 was a "firearm."

¶ 33                                                    *Knowledge*

¶ 34        Defendant also argues that the State failed to prove beyond a reasonable doubt that he knew the TEC-22 he possessed was a "firearm."

¶ 35        The State establishes a violation of section 2(a)(1) of the FOID Act by demonstrating that (1) the defendant knowingly possessed a firearm and (2) knew he did not have a valid FOID card. *People v. Shelly*, 2024 IL App (3d) 220432, ¶¶ 26-27, 29. "Knowledge of a material fact includes awareness of the substantial probability that the fact exists." 720 ILCS 5/4-5 (West 2022). "Knowledge is often proven with circumstantial evidence [citation], and at least in some settings, knowledge may be established with reference to what a reasonable person would know under the circumstances [citation]." *People v. Purta*, 2023 IL App (2d) 220169, ¶ 21. We apply same sufficiency of the evidence standard "regardless of whether the evidence is direct or circumstantial." *People v. Norris*, 399 Ill. App. 3d 525, 531 (2010).

¶ 36        Here, Oomen testified that he asked defendant whether he had anything in his vehicle. Defendant responded "yes," and retrieved the TEC-22. Defendant referred to the firearm first as a "Glock" and then as a ".22." Additionally, he informed Oomens that the ".22" did not have a spring. We find it notable that when Oomen asked defendant whether he had anything in the vehicle, he retrieved the TEC-22 instead of any of the other items in his vehicle. The trier of fact could reasonably infer that when Oomen asked defendant whether there was anything in the vehicle, defendant understood that Oomen was asking about weapons or other contraband.

Furthermore, defendant referred to the TEC-22 as a "Glock" and then by the caliber of bullets that it fires, and felt the need to inform Oomen that it was currently inoperable. Viewing the evidence in the light most favorable to the State, the trier of fact could have found that the State established that defendant was aware of a substantial probability that the TEC-22 recovered was a firearm based on his actions during the traffic stop.

¶ 37                                  Constitutionality of FOID Act

¶ 38        Defendant next argues that FOID Act is unconstitutional under the Second Amendment of United States Constitution since it subjects individuals to criminal penalties for possessing a firearm without a license from the state of Illinois.

¶ 39        This court's decision in *People v. Gunn*, 2023 IL App (1st) 221032, is dispositive.  In *Gunn* another panel of this court held that the FOID Act is constitutional under the Second Amendment. *Id*. ¶¶ 19, 32. In its opinion, the *Gunn* court addressed our Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). The *Gunn* court noted that *Bruen* explicitly recognized that "shall-issue" licensing regimes such as Illinois's FOID Act were permissible under the Second Amendment. *Gunn*, 2023 IL App (1st) 221032, ¶ 19 (citing *Bruen*, 597 U.S. at 38 n.9). Accordingly, we reject defendant's facial challenge to the constitutionality of the FOID Act.

¶ 40                                         CONCLUSION

¶ 41        For the reasons stated above, we affirm the judgment of the circuit court of Cook County.

¶ 42        Affirmed.