2026 IL App (1st) 241638-U

No. 1-24-1638

Order filed April 17, 2026

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23 MC5 001175 |
| | ) | |
| ZYKIA BOBO, | ) | Honorable |
| | ) | John A. Fairman, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE GAMRATH delivered the judgment of the court.
Presiding Justice C.A. Walker and Justice Pucinski concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm defendant's conviction for unlawful use of a weapon where the State proved knowing possession of a firearm beyond a reasonable doubt and the statute is constitutional.

¶ 2    After a bench trial, defendant Zykia Bobo was convicted of misdemeanor unlawful use of a weapon (UUW) and sentenced to one year of conditional discharge along with 100 hours of community service. On appeal, Bobo contends the evidence was insufficient to prove beyond a reasonable doubt that she knowingly possessed a firearm, and the statutory provision under which

she was convicted is unconstitutional both on its face and as applied, citing *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), the second amendment of the United States Constitution (U.S. Const., amend. II), and the Illinois Constitution (Ill. Const. 1970, art. I, § 22). We find these arguments unpersuasive and therefore affirm.

¶ 3    Bobo was charged with UUW (720 ILCS 5/24-1(a)(4)(iv) (West 2022)) after a loaded gun was found in her diaper bag at the Bridgeview courthouse security checkpoint on February 24, 2023. At trial, the evidence showed Bobo admitted to the sheriff's deputy that she owned the diaper bag and the gun. She said she primarily kept the firearm in the diaper bag and either forgot or was unaware it was in the bag. The State published footage from a deputy's body-worn camera, showing Bobo's bag with the firearm inside passing through the security conveyor belt. When asked about the gun, Boho said the gun stays in the bag for the most part.

¶ 4    The State entered into evidence two documents from the Illinois State Police Firearms Services Bureau: (1) a certified abstract of Bobo's FOID card history showing that her FOID registration was active as of May 8, 2018, and current through May 8, 2028, and (2) a certified abstract showing no record on file for Bobo having a concealed carry license (CCL).

¶ 5    Defense counsel moved for a directed finding, arguing:

"[T]his is not a strict liability offense. This offense is not about an act[;] this is about *mens rea*. *Mens rea* is knowledge. And even in the light most favorable to the State there has been no evidence to support proof beyond a reasonable doubt that my client had any knowledge of that weapon being in that diaper bag.

There was no testimony elicited that showed any admission or any knowledge. There was testimony that said she said she didn't know it was in there."

¶ 6    The court denied the motion.

¶ 7    Bobo testified that, before the incident, she had just finished a 12-hour overnight nursing shift, ending at 7 a.m. on February 24, 2023. After returning home, she got her partner and baby ready, packed the diaper bag, and headed to the courthouse. Unbeknownst to her, the diaper bag contained a firearm—she did not put it there that day. She brought the diaper bag into the courthouse but would not have done so had she known about the gun. Bobo was shocked when an officer discovered the firearm inside the bag.

¶ 8    On cross-examination, Bobo testified that she owns the firearm, and on the date of the incident, she did not have a valid CCL. She agreed that she "normally" keeps the firearm in the diaper bag. When asked, "You always keep it there, correct?" Bobo responded, "For the most part."

¶ 9    In closing, defense counsel reiterated that the State failed to satisfy the knowledge requirement of the UUW offense, where the firearm was at the "bottom" of the diaper bag and Bobo's behavior and words did not establish that she knew of the firearm's presence. In response, the State recited the statutory definition of knowledge and claimed Bobo knew there was a "substantial probability" the diaper bag had a firearm when she entered the courthouse, since it usually carried one.

¶ 10    The trial court found Bobo guilty of UUW. The court noted the parties did not dispute whether Bobo owned the firearm and brought it to the courthouse; rather, Bobo challenged "whether or not she knew or should of [*sic*] known" about the firearm. The court observed that, in the body-worn camera footage, Bobo stated that her partner placed the firearm in the diaper bag, but that she did not recall when. The court added that Bobo also testified that "the firearm ***

generally speaking is always kept in the diaper bag," although she maintained that "she didn't know the gun was in the diaper bag" when she brought it to the courthouse.

¶ 11    The court continued:

"[T]here is more than enough evidence to say that [Bobo] knowingly without legal justification brought a weapon into the Bridgeview Courthouse[,] something that was in her exclusive possession or her control[,] that was always kept in a place where it was found[,] exactly where it was always kept generally speaking."

¶ 12    The court found it "not acceptable" for Bobo "to come in the courthouse and say that [she] didn't know" the firearm was in the diaper bag "because [she] didn't check it that day," as she "always" keeps the firearm in the bag. The court added, "That's where it is. You don't keep it in the safe. You don't keep it under the bed. You always keep it in the diaper bag."

¶ 13    Bobo filed a motion for a new trial, alleging, *inter alia*, that the State failed to prove that she knowingly possessed the firearm as she entered the courthouse. At the hearing on the motion, defense counsel argued, "[T]here is no evidence to show that [Bobo] was consciously aware [of] *** that particular result of carrying the gun into the courthouse." Counsel continued:

"Maybe [Bobo] should she have thought better and [been] careful about what diaper bag she brings in the courthouse? That's true, but that's not consciously aware. That's, hey, you made a mistake. Innocent people make misstates [*sic*] all the time.

*** There is simply no knowledge, no conscious awareness of a particular certain act."

¶ 14    In denying Bobo's motion for a new trial, the court emphasized that Bobo brought "a loaded gun *** into the Bridgeview courthouse" inside "a diaper bag where she always keeps the

gun." The court explained that Bobo "always keeps the gun in this spot, she regularly keeps it there, she keeps it there intentionally to keep it away from the kids." Thus, "[t]his isn't a situation where she brought something in where a gun was kept in a place where it normally is not, because that's where she keeps it." The trial court imposed one year of conditional discharge and 100 hours of community service.

¶ 15    On appeal, Bobo first argues that the State failed to prove beyond a reasonable doubt that she knowingly carried the firearm. Bobo notes that in her statements to police and in her testimony, she denied knowing the firearm was in the diaper bag. Also, Bobo maintains that no evidence established that she looked inside the diaper bag between the time she left home and the time the diaper bag was examined at the courthouse. According to Bobo, "the State's evidence shows that she picked up the diaper bag in a rush, did not verify its contents, and mindlessly brought it into the courthouse."

¶ 16    When evidence sufficiency is challenged, the court considers it in favor of the prosecution and determines if a rational factfinder could reasonably find all offense elements beyond a reasonable doubt. *People v. Jones*, 2023 IL 127810, ¶ 28. We will not retry Bobo, nor will we substitute our judgment for that of the trier of fact "on questions involving the weight of the evidence or the credibility of witnesses." *Id.* Rather, "it is our duty to carefully examine the evidence while bearing in mind that the trier of fact is in the best position to judge the credibility of witnesses, and due consideration must be given to the fact that the fact finder saw and heard the witnesses." (Internal quotation marks omitted.) *People v. Williams*, 2025 IL App (1st) 240582, ¶ 44. We draw all reasonable inferences from the evidence in favor of the State, and we will only

overturn a conviction where the evidence is "so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the Bobo's guilt." *Jones*, 2023 IL 127810, ¶ 28.

¶ 17 As charged, a person commits the offense of UUW when she knowingly carries or possesses any firearm concealed on or about her person, except when on her land or in her own "abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission," without a valid CCL. 720 ILCS 5/24-1(a)(4)(iv) (West 2022). Bobo only challenges the sufficiency of the evidence regarding the element of knowledge.

¶ 18 A person acts knowingly as to "[t]he nature or attendant circumstances" of her conduct when she is "consciously aware" that her conduct "is of that nature or that those circumstances exist." 720 ILCS 5/4-5(a) (West 2022). "Knowledge of a material fact includes awareness of the substantial probability that the fact exists." *Id.* Further, a person acts knowingly as to the result of her conduct when she is "consciously aware" that the result is "practically certain to be caused by [her] conduct." *Id.* § 4-5(b). "Knowledge may be, and ordinarily is, proven circumstantially." *People v. Ortiz*, 196 Ill. 2d 236, 260 (2001). Knowledge may be proven "by evidence of a defendant's acts or conduct from which one can infer that he knew *** contraband existed in the place it was found." *People v. Welch*, 2025 IL App (1st) 231116, ¶ 23. "[K]nowledge may be established with reference to what a reasonable person would know under the circumstances." *People v. Paramo*, 2024 IL App (1st) 230952-U, ¶ 35; *People v. Purta*, 2023 IL App (2d) 220169, ¶ 21; *People v. Miller*, 2013 IL App (1st) 110879, ¶ 55. Here, whether Bobo had knowledge is a question of fact for the trier of fact. See *Jones*, 2023 IL 127810, ¶ 27.

¶ 19    At trial, the evidence showed that Bobo brought a diaper bag to the courthouse, allegedly unaware it contained a firearm. After the X-ray machine detected the weapon, Bobo checked the bag, stepped back, and looked toward officers. She explained that she and her partner primarily kept the firearm in the diaper bag, but she had forgotten it was there and did not recall placing it there. When reviewing the evidence in the light most favorable to the State, a rational factfinder could determine beyond a reasonable doubt that Bobo knowingly possessed the firearm. Specifically, the evidence demonstrates that Bobo was aware of the "substantial probability" that the firearm was in the diaper bag, which she identified as the location where the weapon was primarily kept. See 720 ILCS 5/4-5(a) (West 2022). Furthermore, since the firearm was generally kept in the diaper bag, a rational trier of fact could infer that Bobo was aware that carrying the diaper bag would almost certainly entail transporting the firearm as well. *Id.* § 4-5(b). As established in *People v. Smith*, 226 Ill. App. 3d 433, 436 (1992), "[a] defendant cannot ignore the obvious and then assert [her] ignorance as a defense." (Internal quotation marks omitted.)

¶ 20    In reaching this conclusion, we recognize that Bobo told police and testified that she did not know or had forgotten the firearm was in the diaper bag. However, she also admitted the bag "always" or "for the most part" contained the firearm, thus making her testimony unreasonable. Moreover, the trial court could accept or reject all or part of Bobo's evidence and testimony (see *People v. Corral*, 2019 IL App (1st) 171501, ¶ 85) and was not "required to disregard inferences which flow normally from the evidence" or "search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *People v. Hardman*, 2017 IL 121453, ¶ 37 (internal quotation marks omitted). Given this record, the evidence was not so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of Bobo's guilt of

UUW. See *Jones*, 2023 IL 127810, ¶ 28; see also *People v. Roberts*, 263 Ill. App. 3d 348, 353 (1994) (evidence was sufficient to show defendant had knowledge of firearm in her purse based on all the surrounding circumstances).

¶ 21    Next, Bobo challenges the UUW statute on constitutional grounds, arguing that Illinois's dual-licensing scheme, requiring a FOID card before a CCL, has no historical analogue under *Bruen* and violates the second amendment of the United States Constitution (U.S. Const., amend. II) and the Illinois Constitution (Ill. Const. 1970, art. I, § 22). The Illinois Supreme Court recently rejected this argument in *People v. Thompson*, 2025 IL 129965, as do we.

¶ 22    Bobo goes on to argue she is an individual citizen under article I, section 22, of the Illinois Constitution, and that the Illinois licensing regime is an invalid exercise of police power. Not so. "[F]ederal and state legislatures and local governments have police powers to pass laws that promote the health, safety and general welfare of their citizens, and that the police power includes the power to regulate certain aspects of gun possession and ownership." *People v. Robinson*, 2011 IL App (1st) 100078, ¶ 23. FOID card and CCL requirements are legitimate uses of police power under our state constitution because they "promote the State's interest in public safety." *People v. Burns*, 2024 IL App (4th) 230428, ¶ 47; see also 430 ILCS 65/1 (West 2022) (requiring FOID cards promotes a system by which law enforcement can identify individuals who are not qualified to possess firearms, which "promote[s] and protect[s] the health, safety and welfare of the public"); 430 ILCS 66/10(a)(4) (West 2022) (eligible recipients of a CCL must not pose "a threat to public safety as determined by the Concealed Carry Licensing Review Board").

¶ 23    Lastly, Bobo contends, for the first time on appeal, section 24-1(a)(4)(iv) of the UUW statute is unconstitutional as applied to her for lack of a historical basis. Forfeiture aside, this contention is equally meritless under *Thompson* and *Robinson*, cited above.

¶ 24    Accordingly, we affirm Bobo's conviction for UUW where the State proved knowing possession of a firearm beyond a reasonable doubt and the statute under which she was convicted is constitutional.

¶ 25    Affirmed.